BOARD OF COMMISSIONERS OF THE
UTAH STATE BAR, Plaintiff and
Appellee,

v.

Benton PETERSEN, Defendant
and Appellant.

No. 950551.

Supreme Court of Utah.

April 25, 1997.

Carman E. Kipp, Gregory J. Sanders, Sandra L. Steinvoort, Salt Lake City, for plaintiff and appellee.

D. Bruce Oliver, Salt Lake City, for defendant and appellant.

RUSSON, Justice:

## INTRODUCTION

Benton Petersen appeals from a judgment entered on a jury verdict finding that he had engaged in the unauthorized practice of law in violation of section 78–51–25 of the Utah Code. On appeal, Petersen argues that the statute is unconstitutionally vague and overbroad, that it violates the separation of powers doctrine, and that it was rendered void by a 1985 amendment to the Utah Constitution. He also argues that the trial court committed reversible error in its response to a jury inquiry during deliberations, in denying his motion for a new trial, and in improperly ordering him to pay costs. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

Petersen, a nonattorney, has worked in Manti, Utah, since 1991. During that time, he has prepared wills, divorce papers, and pleadings and conducted legal research on behalf of clients for a fee. Petersen also advertised his services in local publications. Just prior to moving to Manti, Petersen had completed a nine-month correspondence course through the N.R.I. Paralegal School. Petersen subsequently registered as a paralegal through the National Paralegal Association, the Pennsylvania organization which offered the correspondence course. However, Petersen was never employed by an attorney, and none of his law-related work was supervised by an attorney. Petersen's activities were brought to the attention of the Board of Bar Commissioners of the Utah State Bar (the "Bar"), and the Bar filed a formal complaint against Petersen in November 1993. The Bar claimed that Petersen had engaged in the unauthorized practice of law in violation of section 78–51–25 of the Utah Code and sought a permanent injunction against him. Section 78–51–25 of the Utah Code states in relevant part as follows:

No person who is not duly admitted and licensed to practice law within this state nor any person whose right or license to so practice has terminated ... shall practice or assume to act or hold himself out to the public as a person qualified to practice or carry on the calling of. a lawyer within the state.

Petersen filed two pretrial motions to have section 78–51–25 declared unconstitutional. In the first motion, Petersen claimed that the statute violated the Utah Constitution due to vagueness and overbreadth. In the second motion, Petersen argued that the statute violated both the separation of powers doctrine of the Utah Constitution and a 1985 amendment to the Utah Constitution that granted the judicial department the authority to regulate the practice of law in Utah. The trial court denied both motions.

The case was tried to a jury in June 1995, at which time the judge instructed the jury regarding the law to be applied to the case. During deliberations, the jury submitted a written question to the judge regarding jury instructions relating to the definition of "the practice of law" and "the unauthorized practice of law." The jury asked whether the definitions in the instructions were to be recognized as law or as the judge's opinion. Without notice to either attorney, the judge responded to the jury in writing as follows: "The law as written in the instructions and as read to you by the court is binding upon you, the jury. A jury decides the facts and applies them to the law." Before the jury returned with a verdict, the attorneys came back to the courtroom, and the judge read the jury's question to them as well as the judge's response. Neither attorney raised any objections.

The jury returned a verdict in favor of the Bar and against Petersen, and the court ordered Petersen to stop the unauthorized practice of law. Petersen filed a motion for a new trial, and the Bar filed a motion to have

Petersen pay its costs. The court granted the Bar's motion for costs and denied Petersen's motion for a new trial.

On appeal, Petersen argues that section 78–51–25 is unconstitutionally vague, violating the due process (art. I, § 7) and uniform operation of laws provisions (art. I, § 24) of the Utah Constitution in that it does not describe the conduct it is prohibiting adequately enough to give notice to the ordinary reader. Petersen also claims that the Bar's interpretation of the statute would make it "illegal for any one to aid in the legal process," and thus the statute is unconstitutionally overbroad, again violating article I, sections 7 and 24, as well as article XII, section 19 of the Utah Constitution.

Petersen also argues that the 1985 amendment of article VIII of the Utah Constitution granted the Utah Supreme Court the exclusive authority to regulate the practice of law. Utah Const. art. VIII, § 4. Thus Petersen claims that section 78–51–25 violates the separation of powers doctrine as stated in article V, section 1 of the Utah Constitution by purporting to authorize the legislature to pass a law that regulates the unauthorized practice of law.

Petersen claims that the trial court committed reversible error in several other respects. Petersen first argues that the trial court erred in its response to the jury's inquiry during deliberations. Petersen argues that under rule 47 of the Utah Rules of Civil Procedure, the court should have at least notified the attorneys before responding to the jury. Petersen also claims that the court's response unfairly prejudiced him by adopting as law the Bar's definition of what constitutes the practice of law. Petersen further claims that because the statute does not survive the scrutiny of article I, section 24, he should have been granted a new trial on the grounds of "[e]rror in law." Utah R.Civ.P. 59(a)(7). Finally, Petersen claims that the Bar's motion for costs was filed too late and, in any event, certain of the costs requested by the Bar and granted by the court were inappropriate. Thus Petersen argues that the trial court abused its discretion in awarding costs to the Bar.

The Bar argues that section 78–51–25 of the Utah Code is not unconstitutionally vague because it does give a person of ordinary intelligence adequate notice of the prohibited conduct. The Bar also argues that the statute is not unconstitutionally overbroad, since it is limited in scope to those not licensed to practice law within Utah and therefore does not prohibit any protected conduct. Further, the Bar claims that the statute does not violate the separation of powers doctrine because the Utah Supreme Court was given power to regulate the *authorized* practice of law, not the *unauthorized* practice of law as the statute purports to do.

The Bar also argues that even though the trial court should have notified the attorneys before responding to the jury's inquiry, Petersen did not object to the trial court's communication when given a chance before the jury returned a verdict. Thus, the Bar argues, he cannot now raise this objection on appeal absent plain error or exceptional circumstances. Further, because the court's response to the jury's question was a correct statement of the law, the Bar argues that Petersen was not harmed in any way by the communication. The Bar further argues that the trial court's denial of the motion for a new trial must be upheld because no abuse of discretion has been shown. In addition, the trial court had already denied Petersen's pretrial motions to have the statute declared unconstitutional pursuant to article I, section 24 of the Utah Constitution. Finally, the Bar argues that if its motion for costs was late, it was excused because the Bar requested, and the court granted, an extension of time in order to file the motion. Further, the Bar claims that all costs incurred were necessary to the presentation and development of its case and therefore they were properly recoverable.

## STANDARDS OF REVIEW

■ Issues regarding the constitutionality of a statute are questions of law which we review for correctness, affording no particular deference to the trial court's rulings. *Ryan v. Gold Cross Servs., Inc.*, 903 P.2d 423, 424 (Utah 1995); *Mountain Fuel Sup-*

*ply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 887 (Utah 1988). A statute is presumed constitutional, and "we resolve any reasonable doubts in favor of constitutionality." *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993).

■ The determination of the propriety of a trial court's communication with a jury during deliberations is reviewed under a correction-of-error standard, and the trial court will be reversed only if the error is "substantial or prejudicial ... such that the result would have been different had it not taken place." *Tjas v. Proctor,* 591 P.2d 438, 441 (Utah 1979); *accord Ames v. Maas,* 846 P.2d 468, 471 (Utah.Ct.App.1993).

■ A trial court has discretion in determining whether to grant or deny a motion for a new trial, and we reverse the trial court's decision only for clear abuse of that discretion. *Braithwaite v. West Valley City Corp.,* 921 P.2d 997, 1001 (Utah 1996); *Crookston v. Fire Ins. Exch.,* 817 P.2d 789, 799 (Utah 1991). "The determination to award taxable costs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 460 (Utah 1993).

## ANALYSIS

### I. CONSTITUTIONAL CHALLENGES

Petersen argues that section 78–51–25 of the Utah Code is unconstitutional for the following reasons: (1) it is vague in violation of article I, sections 7 and 24 of the Utah Constitution; (2) it is overbroad in violation of article I, sections 7 and 24, as well as article XII, section 19 of the Utah Constitution; (3) it violates the separation of powers doctrine as found in article V, section 1 of the Utah Constitution; and (4) it was rendered void by the 1985 amendment to article VIII

of the Utah Constitution. We will address each of these arguments in turn.

### A. Vagueness

Petersen asserts that section 78–51–25 of the Utah Code is unconstitutionally vague in violation of article I, sections 7 [1] and 24 [2] of the Utah Constitution.[3] In *State v. Frampton,* 737 P.2d 183 (Utah 1987), we held that "[v]agueness questions are essentially procedural due process issues, i.e., whether the statute adequately notices the proscribed conduct." *Id.* at 191–92. Thus a "statute is not unconstitutionally vague if it is sufficiently explicit to inform the ordinary reader what conduct is prohibited." *State v. Theobald,* 645 P.2d 50, 51 (Utah 1982) (footnote omitted).

■ Petersen claims that an ordinary reader would not understand section 78–51–25 to prohibit the kinds of activities in which he was engaged. He asserts that the obvious reading of the statute is that a nonlawyer is prohibited from either claiming to be or working as a lawyer, neither of which Petersen did. If that is not what the statute means, Petersen argues, then it is too vague. We disagree. The statute prohibits far more than just falsely claiming to be a licensed attorney. The statute also prohibits "hold[ing oneself] out to the public as a person qualified to practice [law]." The obvious reading of the statute is that unless a person is licensed to practice law within the state, he cannot practice as a lawyer, act as a lawyer, or even *present himself to the public as a person qualified* to act as a lawyer. The language of section 78–51–25 is sufficiently clear to give an "ordinary reader" notice of what conduct is prohibited and is therefore not unconstitutionally vague.

■ Although "the practice of law" has not been exactly defined, an "ordinary reader" would understand that certain services, when performed on someone else's behalf, are part

1. Article I, section 7 of the Utah Constitution states: "No person shall be deprived of life, liberty or property, without due process of law."

2. Article I, section 24 of the Utah Constitution states: "All laws of a general nature shall have uniform operation."

3. Although Petersen stated that section 78–51–25 was unconstitutionally vague in violation of article I, section 24 of the Utah Constitution, his vagueness arguments focus entirely on a due process analysis under article I, section 7. We analyze section 78–51–25 under article I, section 24 later in this opinion.

of such practice. Such services would include not only appearing in court, but also drafting complaints, drafting or negotiating contracts, drafting wills, counseling or giving advice on legal matters, and many other things. In *Utah State Bar v. Summerhayes & Hayden, Public Adjusters,* 905 P.2d 867 (Utah 1995), this court, while noting that "[w]hat constitutes the practice of law in any given situation requires a case-by-case decision," stated:

> The practice of law, although difficult to define precisely, is generally acknowledged to involve the rendering of services that require the knowledge and application of legal principles to serve the interests of another with his consent. It not only consists of performing services in the courts of justice throughout the various stages of a matter, but in a larger sense involves counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities. It also includes the preparation of contracts and other legal instruments by which legal rights and duties are fixed.

*Id.* at 869–70 (citations omitted). Further, when such services are performed for a fee, it is even more likely that they constitute the practice of law. In *Nelson v. Smith,* 107 Utah 382, 154 P.2d 634 (1944), this court stated that "[t]he practice of law, though impossible of exact definition, involves the carrying on of the calling of an attorney *usually for gain."* *Id.* at 389, 154 P.2d 634. The court further stated that an element of the practice of law is "the rendering of legal service or the giving of legal advice to another *usually for gain."* *Id.* at 390, 154 P.2d 634. Later, the court emphasized the point for the third time when it stated: "'The holding out [as one qualified to practice law] may be evidenced by repeated acts indicating a course of conduct, or *by the exaction of a consideration.'"* *Id.* (quoting *Liberty Mut. Ins. Co. v. Jones,* 344 Mo. 932, 130 S.W.2d 945, 955 (1939)).

■ Petersen's conduct fell within the clear sanction of section 78–51–25. Although not licensed to practice law, he met with and counseled clients on how to best proceed in their particular cases; with the aid of forms he selected, he drafted such things as complaints, summonses, motions, orders, and findings of fact and conclusions of law for pro se clients; he drafted wills; and he advertised his services in local publications. Thus Petersen held himself out to the public as a person qualified to provide, for a fee, services constituting the practice of law.

### B. Overbreadth

Petersen claims that section 78–51–25 is unconstitutionally overbroad in violation of article I, sections 7 and 24, and article XII, section 19[4] of the Utah Constitution. In *Frampton* we stated: "Statutory overbreadth ... is a substantive due process question which addresses the issue of whether 'the statute in question is so broad that it may not only prohibit unprotected behavior but may also prohibit constitutionally protected activity as well.'" 737 P.2d at 192 (quoting *City of Everett v. Moore,* 37 Wash. App. 862, 683 P.2d 617, 618 (1984)). Petersen asserts that the Bar's interpretation of the statute is too broad because it would make it "illegal for any one to aid in the legal process" and thus would deprive many individuals, including Petersen, of their right to employment as guaranteed by Utah Constitution article XII, section 19. Petersen argues that under the Bar's interpretation, people engaged in the unauthorized practice of law would include police officers who inform individuals in custody of their *Miranda*[5] rights, nonattorney justice court judges when rendering a judgment, and court clerks who assist in the filing of court documents. Petersen asserts that the statute would deprive all of these people of their right to work, a property right, without due process.

■ Petersen's arguments are without merit. In the previous section, we discussed the plain meaning of section 78–51–25 and the fact that Petersen's activities clearly fell

---

**4.** Article XII, section 19 of the Utah Constitution states: "Every person in this State shall be free to obtain employment whenever possible."

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

within its parameters. This does not mean, however, that Petersen is deprived of his right to perform law-related work. He may work as a paralegal under the supervision of an attorney. In addition, it is absurd to argue that the statute prohibits the activities of policemen, justice court judges, and clerks of court. None of these individuals offer legal advice, draft legal documents, or in any other way represent clients for a fee. All of these individuals are required by law to perform the duties they perform. Further, justice court judges work from within the justice system and are subject to regulation by the judicial council, the governing body of the state judiciary, and their decisions are subject to de novo review[6] in district court. Utah Code Ann. § 78–5–120. Section 78–51–25 does not prohibit any constitutionally protected activities and is therefore not overbroad.

▮▮▮▮ Petersen also claims that it is a violation of article I, section 24 of the Utah Constitution to treat him any differently under section 78–51–25 than a paralegal working under the supervision of an attorney. Petersen's assertion is incorrect. A statute survives a uniform operation of laws challenge if (1) the classification created by the statute is reasonable, (2) the statute's underlying legislative objectives are legitimate, and (3) there is a reasonable relationship between the classification and the objectives. *Ryan v. Gold Cross Servs. Inc.*, 903 P.2d 423, 426 (Utah 1995). Section 78–51–25 passes muster under this test.

The legislative objective of section 78–51–25 was to protect the public. As this court stated in *Nelson v. Smith:*

> The practice of law is so affected with the public interest that the state has both a right and a duty to control and regulate it in order to promote the public welfare.... It is the attorney who first sits as judge of the merits of every case, who decides whether or not suit should be commenced. The court and the public are interested in having that decision rendered by those

qualified so to do.... The public is directly concerned with the functioning of the machinery set up for the purpose of handling judicial work.

107 Utah at 387–88, 154 P.2d 634. As Petersen himself concedes, it is certainly a legitimate objective to want to protect the public from people claiming to be qualified to practice law even though they are not so qualified. In order to protect the public in this way, it is also reasonable to classify individuals based on a *license* to practice law. There are many safeguards built into the licensing process that offer protection to the public. In order to obtain a license to practice law within Utah, an applicant must be a graduate of an accredited three-year law school, must provide the state with evidence of good moral character, must pass a comprehensive exam testing her knowledge of both national and state law, and must pay license fees. The applicant then must pledge to uphold the laws of the United States and the State of Utah and to be subject to the Rules of Professional Conduct, which govern the practice of law within the state. *See* Utah Code Ann. § 78–51–10. Once granted a license, the attorney must regularly participate in continuing legal education courses and is subject to all laws and rules regulating the practice of law, including those laws which hold attorneys responsible for the actions of their paralegals. *See* Utah R.Prof. Conduct 5.3.

The reasonable relationship between the purpose of section 78–51–25 and the license-based classification it creates is clear. While all of the safeguards mentioned above protect the public from the negligence or misdeeds of attorneys and paralegals working under attorney supervision, none of these safeguards apply to individuals performing law-related work completely independent of attorney supervision such as Petersen. If an attorney-supervised paralegal makes a serious error affecting the legal rights of a client, the attorney is subject to sanctions under the rules applying to the practice of law, and the client has recourse against the attorney in

---

6. A justice court is not a court of record in this state. Therefore, because no record is made of the proceedings in a justice court, a district court hears the case anew on appeal (i.e., de novo).

*See South Salt Lake v. Burton,* 718 P.2d 405, 406 n. 1 (Utah 1986) (per curiam); *State v. Johnson,* 700 P.2d 1125, 1127 (Utah 1985).

the form of a malpractice action. When an individual like Petersen makes such an error, the rules governing the practice of law do not reach him, and the "client" is unable to sustain a malpractice action. Thus the license-based classification in section 78–51–25 is necessary in order to protect the public and does not violate article I, section 24 of the Utah Constitution.

### C. Separation of Powers

Petersen next claims that section 78–51–25 of the Utah Code violates the separation of powers doctrine as found in article V, section 1 of the Utah Constitution.[7] Petersen argues that in passing section 78–51–25, the legislature impermissibly encroached upon the Utah Supreme Court's power to regulate the practice of law as granted by article VIII, section 4 of the Utah Constitution. We disagree. The regulatory authority granted the Utah Supreme Court in article VIII, section 4 clearly refers to the *authorized* practice of law, not to the unauthorized practice of law. Article VIII, section 4 states in relevant part with emphasis added: "The Supreme Court by rule shall govern *the practice of law,* including *admission* to practice law and the conduct and discipline of *persons admitted to practice law.*" This court's power over the regulation of the practice of law is a power over "'members of the legal profession as officers of the Court.'" *Barnard v. Utah State Bar,* 804 P.2d 526, 528 (Utah 1991) (quoting Rules for the Integration and Management of the Utah State Bar, Rule (A)1). The scope of article VIII, section 4, does not extend to the unauthorized practice of law. Therefore, section 78–51–25 does not encroach on any exclusive jurisdiction of the Utah Supreme Court and does not violate the separation of powers doctrine.

### D. 1985 Constitutional Amendment

Petersen's final constitutional challenge to section 78–51–25 of the Utah Code is that the section was rendered void by the 1985 amendment to article VIII, section 4 of the Utah Constitution. However, this challenge is essentially a slight variation of Petersen's separation of powers challenge. Petersen notes that section 78–51–25, in its present form, became effective in 1963. Petersen then argues that when article VIII, section 4 was amended in 1985, it gave exclusive authority over the regulation of the practice of law to the Utah Supreme Court. Therefore, Petersen concludes, because section 78–51–25 encroaches on the Utah Supreme Court's exclusive power as granted by article VIII, section 4 the statute was rendered void in 1985. However, as we have already discussed, the power granted to the Utah Supreme Court by article VIII, section 4 was over the *authorized* practice of law. Thus, because section 78–51–25 governs the *unauthorized* practice of law, it does not conflict with article VIII, section 4 and was not rendered void by the 1985 amendment to the Utah Constitution.

## II. INSTRUCTIONS TO THE JURY

Petersen claims that the trial court committed reversible error in communicating with the jury during deliberations. As stated earlier, a court's communication with a jury will be considered reversible error only if the error is "substantial or prejudicial ... such that the result would have been different had it not taken place." *Tjas v. Proctor,* 591 P.2d at 441. Petersen first claims that the trial court violated rule 47(n) of the Utah Rules of Civil Procedure when it communicated with the jury without first notifying the attorneys. Rule 47(n) states:

> After the jury have retired for deliberation, if there is a disagreement among them as to any part of the testimony, or if they desire to be informed on any point of law arising in the cause, they may require the officer to conduct them into court. Upon their being brought into court the

---

7. Article V, section 1, of the Utah Constitution reads:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

information required must be given in the presence of, or after notice to, the parties or counsel. Such information must be given in writing or taken down by the reporter.

The language of rule 47(n) seems to require notification of the attorneys only when the jury is conducted into the courtroom in the presence of the judge. In the case before us, however, the jury was never brought into the courtroom and the communications were only in writing.

■ In any event, even if the trial court's communication with the jury was error under rule 47(n), that error was harmless. The jury wanted to know whether certain jury instructions relating to the definition of "the practice of law" reflected the law or the trial judge's opinion. The court responded: "The law written in the instructions and as read to you by the court is binding upon you the jury. A jury decides the facts and applies them to the law." The trial court's response to the jury's inquiry was simply a correct statement of the law regarding the responsibilities of a jury—i.e., a jury must apply the law as stated in the instructions to the facts of the case. *See State v. Young,* 853 P.2d 327, 342 (Utah 1993) (jurors must "apply the law as instructed by the court"); *Reeves v. Gentile,* 813 P.2d 111, 114 (Utah 1991) (same); *Ashton v. Ashton,* 733 P.2d 147, 153 (Utah 1987) (same); *see also* Model Utah Jury Instruction 1.5 (1993) (the jury is "bound to accept the rules of law that [the court] give[s] them] whether [the jury] agree[s] with them or not"). Thus we cannot say that the trial court committed reversible error when it merely restated settled law.

■ Petersen claims that the trial court's response prejudiced him because it led the jury to think that the trial court had adopted the Bar's theory regarding what constitutes "the practice of law." However, as stated above, the trial court's response was nothing more or less than an accurate statement of the law governing juries. If Petersen wanted to take issue with the language of the

instructions about which the jury inquired, he should have objected before the instructions were given to the jury. By failing to do so, Petersen has waived any argument that the instruction was incorrect and should not have been given. We will review the instructions only if in our discretion we conclude that the interests of justice so require. *See* Utah R. Civ. P. 51; *Billings v. Union Bankers Ins. Co.,* 918 P.2d 461, 464 n. 1 (Utah 1996). In other words, Petersen must " 'present a persuasive reason' for exercising that discretion, *E.A. Strout W. Realty Agency, Inc. v. W.C. Foy & Sons, Inc.,* 665 P.2d 1320, 1322 (Utah 1983), and this requires 'showing special circumstances warranting such review.' *Cambelt Int'l Corp. v. Dalton,* 745 P.2d 1239, 1241 (Utah 1987)." *Hansen v. Stewart,* 761 P.2d 14, 17 (Utah 1988). However, Petersen has made no effort to show any special circumstances or to present any persuasive reason why we should exercise our discretion and review the instructions. Therefore, we decline to review the trial court's instructions in this case for the first time on appeal.

## III. NEW TRIAL

Petersen claims that the trial court erred in not granting him a new trial. Petersen argues that section 78–51–25 of the Utah Code violates article I, section 24 of the Utah Constitution and thus he should have been granted a new trial pursuant to rule 59(a)(7) of the Utah Rules of Civil Procedure.[8] However, we have already determined in section I.B. above that section 78–51–25 does not violate article I, section 24 of the Utah Constitution. Thus the trial court did not commit any error of law and correctly denied Petersen's motion for a new trial.

## IV. AWARD OF COSTS

Petersen claims that the trial court erred in its award of costs in this case to the Bar. Following entry of the judgment, the trial court ordered Petersen to pay the Bar's costs

---

8. Rule 59(a)(7) of the Utah Rules of Civil Procedure states in relevant part:

 (a) **Grounds.** Subject to the provisions of Rule 61, a new trial may be granted to all or

any of the parties and on all or part of the issues, for any of the following causes;

 . . .;

 (7) Error in law.

in the amount of $1,033.33, which included $722.75 for depositions. We note again that "[t]he determination to award taxable costs is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion." *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 460 (Utah 1993). Petersen first claims that the Bar's motion for costs was not timely filed as required by rule 54(d) of the Utah Rules of Civil Procedure and therefore should have been denied by the trial court. According to rule 54(d)(2), the party requesting costs must file its motion "within five days after the entry of judgment." Judgment in this case was entered on July 26, 1995, but the Bar's motion for costs was not filed until August 7, 1995, twelve days later. Thus the Bar's motion for costs was untimely under rule 54(d)(2).

However, although the judgment was signed by the trial court on July 26, the Bar did not learn of the entry of judgment until August 4, despite daily contact with the court clerk. For some reason, the judgment was not entered into the court's computer system until August 4. Because of this delay, the Bar could not, by ordinary means, have known of the signed judgment until August 4. As soon as the Bar learned of the entry of judgment, it filed its motion for costs with the trial court. The Bar attached to its motion a letter explaining the reason for the delay and requesting an extension of time to file the motion. The trial court granted the request for an extension of time. Given the Bar's diligent efforts and the unusual circumstances surrounding the entry of judgment, we do not think that the trial court abused its discretion in allowing the Bar an extension of time to file its motion for costs.

Petersen next argues that the trial court erred in granting the Bar its costs for depositions. In preparing for trial, the Bar deposed three individuals: (1) Petersen, (2) Judge Don V. Tibbs of the Sixth Judicial District, prior to his retirement, and (3) Kristine Christiansen, Clerk of Court for the Sixth Judicial District. Two of these individuals, Petersen and Judge Tibbs, later appeared as witnesses at the trial. Petersen asserts that none of these depositions was necessary.

A prevailing party is not automatically entitled to recover deposition costs. In *Highland Construction Co. v. Union Pacific Railroad*, 683 P.2d 1042 (Utah 1984), we stated: "The award of costs should be narrowly made to guard against abuse by those better financially equipped lest costs of seeking justice become prohibitive for the financially ill equipped." *Id.* at 1051. In determining whether deposition costs are recoverable, the general rule is that a party may recover deposition costs as long as the trial court is persuaded that the depositions were "taken in good faith and, in light of the circumstances, appeared to be essential for the *development and presentation of the case*." *Frampton v. Wilson*, 605 P.2d 771, 774 (Utah 1980) (emphasis added); *see also Ong Int'l*, 850 P.2d at 460; *Highland Constr. Co.*, 683 P.2d at 1051. In the case before us, it appears that the depositions of Petersen and Judge Tibbs were not essential for the development and presentation of the Bar's case. Both Petersen and Judge Tibbs testified at trial, and neither deposition was used at trial.

The Bar argues that the costs should be recoverable because the Bar *thought*, when it took the depositions, that they *might* be needed at trial. The Bar thought Petersen's deposition might be necessary for impeachment purposes while Judge Tibbs' deposition might be necessary in case his judicial responsibilities prohibited him from appearing at trial. However, a subjective belief that a deposition could possibly be necessary is simply not enough to justify recovery of deposition costs. There is *always* a possibility that a deposition will be useful at trial. If we accept the Bar's argument, the costs of practically *every* deposition will be recoverable, and the "costs of seeking justice [will] become prohibitive." *Highland Constr. Co.*, 683 P.2d at 1051. This is not to say that the costs of taking a deposition can never be recovered when the deposition is not used at trial. We have stated that "we would allow deposition costs as necessary and reasonable where the development of the case is of such a complex

nature that discovery cannot be accomplished through the less expensive method of interrogatories, requests for admissions, and requests for the production of documents." *Id.* However, that is not the case here. We hold that the trial court abused its discretion in awarding the Bar its costs relating to the depositions of Petersen and Judge Tibbs.

 The trial court also incorrectly awarded the Bar its costs in connection with the deposition of Kristine Christiansen. The Bar claims that it needed Ms. Christiansen's "sworn testimony regarding the court files for evidentiary purposes." In other words, Ms. Christiansen's role was to, as Petersen puts it, "produce[ ] all of the Court's files containing pleadings which were alleged to have been prepared by Mr. Petersen." However, this was unnecessary. Petersen had already admitted in his deposition, prior to Ms. Christiansen's deposition, to having prepared the documents. Further, the documents were already on file in the Sixth Judicial District clerk's office and could have readily been admitted as evidence at the trial as self-authenticating certified copies of public records. *See* Utah R.Evid. 902(4).

 Petersen also claims that the trial court erred in awarding the Bar witness fees in connection with Shirley Joanie Ferrin and Judge Tibbs. Petersen argues that because, as he alleges, Ms. Ferrin's testimony was not very damaging to his case and Judge Tibbs' testimony was "cumulative," the Bar should not recover these costs. Petersen's arguments are without merit. The costs incurred by the Bar in connection with these witnesses were prescribed by statute. Section 21–5–4(1)(a) and (b) of the Utah Code states in pertinent part that "[e]very juror and witness legally required or in good faith requested to attend a trial court of record … is entitled to: (a) $17 for each day in attendance, and (b) if traveling more than 50 miles, $1 for each four miles in excess of 50 miles actually and necessarily traveled in going only, regardless of county lines." Both Ms. Ferrin and Judge Tibbs were required to travel from Manti to Salt Lake, a distance of greater than 50 miles, in order to testify at the trial. The Bar's request for costs reflects this fact. There is no standard of

effectiveness in the statute that a witness's testimony must meet before the costs are allowed. And it is almost inconceivable that Judge Tibbs' testimony could have been cumulative in light of the fact that the Bar called a total of four witnesses at trial, including Petersen. Thus the trial court did not abuse its discretion in awarding the Bar its costs in connection with Ms. Ferrin's and Judge Tibbs' statutory witness fees and mileage.

## CONCLUSION

In light of the foregoing, we hold the following: (1) Section 78–51–25 of the Utah Code is not unconstitutionally vague in violation of article I, sections 7 and 24 of the Utah Constitution; (2) section 78–51–25 of the Utah Code is not unconstitutionally overbroad in violation of article I, sections 7 and 24, and article XII, section 19 of the Utah Constitution; (3) section 78–51–25 of the Utah Code does not violate the separation of powers doctrine of article V, section 1 of the Utah Constitution; (4) section 78–51–25 was not rendered void by the 1985 amendment to article VIII, section 4 of the Utah Constitution; (5) the trial court did not commit reversible error in its communication with the jury during deliberations; (6) the trial court correctly denied Petersen's motion for a new trial; (7) the trial court improperly awarded deposition costs to the Bar; and (8) the trial court correctly awarded witness fees to the Bar.

Therefore, we affirm the trial court's judgment and injunction but remand for a recalculation of the costs properly recoverable by the Bar consistent with this opinion.

ZIMMERMAN, C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON's opinion.

STEWART, Associate C.J., concurs in the result.