2004 UT 4

**STATE of Utah, Plaintiff and Respondent,**

v.

**Roger Martin MacGUIRE, Defendant and Petitioner.**

**No. 20020071.**

Supreme Court of Utah.

Jan. 23, 2004.

Mark L. Shurtleff, Att'y Gen., J. Frederic Voros, Jr., Christopher D. Ballard, Asst. Att'ys Gen., William K. McGuire, Davis County Att'y, Salt Lake City, for plaintiff.

Scott L. Wiggins, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Utah's criminal homicide statute provides that a person may be prosecuted for causing the death of an unborn child. This interlocutory appeal concerns (1) whether the term "unborn child" is unconstitutionally vague both on its face and as applied, and (2) whether the criminal homicide and aggravated murder statutes violate the federal and state guarantees of equal protection.

¶ 2 Defendant Roger Martin MacGuire has been charged with two counts of aggravated murder for allegedly killing his former wife and her unborn child. In a motion to dismiss Count I in part and Count II in its entirety, defendant contended he could not be prosecuted for killing the unborn child or be charged with aggravated murder based on that killing because Utah's criminal homicide and aggravated murder statutes are unconstitutional. The district court denied defendant's motion to dismiss and defendant peti-

tioned for review of the interlocutory order. We affirm.

## BACKGROUND

¶ 3 Defendant has been charged with the murder of his former wife, Susan C. MacGuire, and her unborn child. According to accounts presented at the preliminary hearing,[1] defendant learned, several days prior to the murder, that Ms. MacGuire was engaged and expecting a baby. He called his former father-in-law on January 14, 2001, to confirm the information. On the morning of January 15, 2001, defendant allegedly entered the insurance office where Ms. MacGuire worked and shot her four times.

¶ 4 One of the bullets entered Ms. MacGuire at the base of her neck and traveled through the occipital bone of the skull. A second bullet entered and exited her left forearm. A third bullet entered the side of her abdomen approximately at the waistline and pierced her abdominal wall and small intestine. A fourth bullet entered her abdomen and traveled through her uterus, lodging in the right wall of her pelvis.[2]

¶ 5 This fourth bullet lethally injured the unborn child Ms. MacGuire was carrying. It severed the umbilical cord and traveled through the placenta and unborn child itself before lodging in the pelvic wall. The medical examiner estimated that the gestational age of the unborn child was between thirteen and fifteen weeks at the time of death. Ms. MacGuire was life-flighted to a hospital where she died later that day.

¶ 6 Defendant has been charged with two counts of aggravated murder. Count I of the information charges defendant with aggravated murder for the death of Ms. MacGuire and alleges two aggravating circumstances; namely, (1) two persons were killed during the same criminal episode, and (2) the homicide was committed to retaliate against or

prevent Ms. MacGuire from testifying, providing evidence, or participating in a legal proceeding or official investigation.[3] Count II of the information charges defendant with aggravated murder for the death of the unborn child during a criminal episode in which two persons were killed.

¶ 7 Defendant filed a motion to dismiss the first aggravating factor in Count I and to dismiss Count II in its entirety on the basis that an unborn child is not a person under the aggravated murder statute, and the criminal homicide and aggravated murder statutes are unconstitutionally vague and violate equal protection guarantees. The district court denied defendant's motion, and defendant filed a petition for interlocutory appeal. We have jurisdiction pursuant to Utah Code Ann. section 78–2–2(3)(h) (2002).

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 8 Whether the district court properly interpreted Utah's criminal homicide and aggravated murder statutes "is a question of law that we review for correctness." *State v. Gomez,* 2002 UT 120, ¶ 11, 63 P.3d 72. Likewise, "[w]hether a statute is constitutional is a question of law [that] we review for correctness, giving no deference to the trial court." *State v. Daniels,* 2002 UT 2, ¶ 30, 40 P.3d 611 (citing *State v. Mohi,* 901 P.2d 991, 995 (Utah 1995)). Moreover, "legislative enactments are presumed to be constitutional." *Greenwood v. City of North Salt Lake,* 817 P.2d 816, 819 (Utah 1991) (citations omitted). As a result, "those who challenge a statute ... as unconstitutional bear" a heavy "burden of demonstrating its unconstitutionality." *Id.* (citations omitted); *accord Mohi,* 901 P.2d at 1009 (Russon, J., concurring and dissenting) (stating the burden of "challenging the constitutionality of a

---

1. The facts included in this section have not been established at trial but remain mere allegations.

2. Although the medical examiner did not specify the exact order of the gunshot wounds, she did testify that the gunshot wounds to the abdomen likely occurred prior to the gunshot wound to the head. She had no opinion as to when the gunshot wound to the arm occurred.

3. The second aggravating factor is based upon the allegation that when defendant arrived at Ms. MacGuire's workplace just prior to the murder, Ms. MacGuire threatened to call the police and report defendant for violating a protective order that was in place at the time.

statute" is "a heavy one"); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) (noting that a "strong presumptive validity" attaches to legislative acts).

## II. VAGUENESS CHALLENGE

¶ 9 Defendant challenges the criminal homicide and aggravated murder statutes of the Utah Code as being unconstitutionally vague both facially and as applied. The criminal homicide statute provides as follows:

(a) A person commits criminal homicide if he intentionally, knowingly, recklessly, with criminal negligence, or acting with a mental state otherwise specified in the statute defining the offense, *causes the death of another human being, including an unborn child.*

(b) There shall be no cause of action for criminal homicide for the death of an unborn child caused by an abortion.

Utah Code Ann. § 76–5–201(1) (1999) (emphasis added).

¶ 10 The aggravated murder statute provides, in relevant part, as follows:

(1) Criminal homicide constitutes aggravated murder if the actor intentionally or knowingly causes the death of *another* under any of the following circumstances:

. . . .

(b) the homicide was committed incident to one act, scheme, course of conduct, or criminal episode during which two or more *persons* were killed . . . .

*Id.* § 76–5–202(1)(b) (emphasis added).

¶ 11 Defendant contends the term "unborn child" in the criminal homicide statute is unconstitutionally vague because the legislature failed to define the term and, absent that definition, it lacks a clear and specific meaning. Moreover, because "unborn child" is not defined, defendant contends the terms "another" and "persons" in the aggravated murder statute are also unconstitutionally vague because it is impossible to know when an unborn child achieves the status of a person. We disagree.

### A. Void for Vagueness Doctrine

¶ 12 Where, as here, a statute "implicates no constitutionally protected conduct," a court will uphold a facial vagueness challenge "only if the [statute] is impermissibly vague in all of its applications." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). A statute that is clear as applied to a particular complainant cannot be considered impermissibly vague in all of its applications and thus will necessarily survive a facial vagueness challenge. *See id.* at 495, 102 S.Ct. 1186 ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").

¶ 13 In order to establish that the complained-of provisions are impermissibly vague, a defendant must demonstrate either (1) that the statutes do not provide "the kind of notice that enables ordinary people to understand what conduct [is prohibited]," or (2) that the statutes "encourage arbitrary and discriminatory enforcement." *State v. Honie*, 2002 UT 4, ¶ 31, 57 P.3d 977 (citing *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983)). Defendant has failed to establish that the statutes violate either test.

### B. Notice that Conduct Is Prohibited

¶ 14 "Vagueness questions are essentially procedural due process issues, i.e., whether the statute adequately notices the proscribed conduct." *State v. Frampton*, 737 P.2d 183, 191–92 (Utah 1987) (citation omitted). If a statute " 'is sufficiently explicit to inform the ordinary reader what conduct is prohibited,' " it is not unconstitutionally vague. *Id.* (quoting *State v. Theobald*, 645 P.2d 50, 51 (Utah 1982)). Here, defendant contends that the criminal homicide and aggravated murder statutes do not provide adequate notice about what type of conduct is prohibited because an ordinary person is left to guess at the meaning of the term "unborn child." Thus, defendant reasons, a person cannot " 'steer between lawful and unlawful conduct.' " *Village of Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. 1186 (quoting *Grayned*

*v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)). We therefore must determine whether the term "unborn child" is sufficiently definite to provide adequate notice as to what conduct is proscribed.

### 1. Plain Meaning of "Unborn Child"

¶ 15 "In considering the meaning of a [statutory] provision, the analysis begins with the plain language of the provision.... We need not look beyond the plain language unless we find some ambiguity in it." *Utah Sch. Bds. Ass'n v. State Bd. of Educ.,* 2001 UT 2, ¶ 13, 17 P.3d 1125 (citation omitted). Moreover, "[t]he plain language of a statute is to be read as a whole, and its provisions interpreted in harmony with other provisions in the same statute and with other statutes under the same and related chapters." *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616 (internal quotations and citations omitted).

¶ 16 In *State v. Larsen,* 578 P.2d 1280, 1281–82 (Utah 1978), we held that a person could not be convicted of automobile homicide for causing the death of a twenty-six-week-old fetus because a fetus was not specifically recognized in statute as a human being. In response to our decision, the legislature amended the criminal homicide statute [4] to provide that a person is guilty of criminal homicide if, acting with the requisite mental state, the person "causes the death of another human being, including an unborn child." Utah Code Ann. § 76–5–201(1)(a) (1999). By its plain meaning the statute recognizes that an unborn child is a human being.

¶ 17 Defendant contends nevertheless that the statute is unconstitutionally vague because "it is impossible to ascertain from statute, or otherwise, when unborn childhood begins." As a result, he argues, an ordinary person is left to guess whether his or her conduct falls within the parameters of the statute because it is unknown at what point a potential life actually becomes an unborn child.

¶ 18 Although the defendant attempts "to inject doubt as to the meaning of words where no doubt would be felt by the normal reader," such straining "is not required by the 'void for vagueness' doctrine, and we will not indulge in it" here. *United States v. Powell,* 423 U.S. 87, 93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). Instead, we will attribute to the legislature the commonsense meaning of the term "unborn child." *Id.*

¶ 19 "Unborn child" is defined as "[t]he individual human life in existence and developing prior to birth." Black's Law Dictionary 1058 (abridged 6th ed.1991). *See also* Merriam–Webster's Collegiate Dictionary 1285 (10th ed.1998) (defining "unborn" as "not born," "not brought into life," or "existing without birth"). Therefore, without modifying language to the contrary, the commonsense meaning of the term "unborn child" is a human being at any stage of development in utero because once fertilization occurs, an unborn child is an "individual human life" that is "in existence and developing prior to birth."

### 2. Definition of "Unborn Child" in Other Chapters of the Utah Criminal Code and in Other Jurisdictions

¶ 20 This definition is consistent with how the term "unborn child" is used in other parts of the criminal code. For example, in a chapter of the criminal code that regulates abortions, the legislature mandates that informational materials be made available to any person contemplating an abortion. Utah Code Ann. § 76–7–305.5(1) (1999). The informational materials must include "the probable anatomical and physiological characteristics of the *unborn child* at two-week gestational increments *from fertilization to full term,* accompanied by pictures or video segments representing the development of an unborn child at those gestational increments." *Id.* § 76–7–305.5(1)(b) (emphasis added).

¶ 21 Additionally, the legislature mandates that the Utah Department of Health produce a videotape "show[ing] an ultrasound of the

---

4. The criminal homicide statute is statutorily linked to the automobile homicide statute, which sets forth the conditions under which criminal homicide constitutes the specific crime of automobile homicide. Utah Code Ann. § 76–5–207(1)(a), (2)(a) (1999).

heart beat of an *unborn child at three weeks gestational age, at six to eight weeks gestational age, and each month thereafter, until 14 weeks gestational age."* *Id.* § 76-7-305.5(4) (emphasis added). Thus, when the plain language of the criminal homicide statute is read in harmony with other chapters of the criminal code, it is clear that the legislature intended the term "unborn child" to encompass the period from fertilization to birth.

¶ 22 Finally, case law from other jurisdictions recognizes that "[t]here is no unconstitutional vagueness in the description of the unborn as the 'unborn child.' " *Brinkley v. Georgia,* 253 Ga. 541, 322 S.E.2d 49, 53 (1984) (affirming convictions of co-defendants for violation of Georgia's feticide statute). Specifically, the Georgia Supreme Court noted that the term "unborn child" in Georgia's feticide statute would have "clearly cover[ed] the entire period of pregnancy" if the legislature had not limited it to the period where an unborn child is "so far developed as to be ordinarily called 'quick.' " *Id.* at 51, 53 (quoting Ga.Code Ann. § 16-5-80 (1982)). The court's conclusion that the state's feticide statute was not unconstitutionally vague was later followed by the Eleventh Circuit Court of Appeals. *Smith v. Newsome,* 815 F.2d 1386, 1387-88 (11th Cir.1987).

3. The Recent Amendment to the Criminal Homicide Statute Does Not Demonstrate that the Term "Unborn Child" Is Unconstitutionally Vague

¶ 23 Defendant also contends that the legislature's recent amendment to the statute demonstrates "in and of itself" that the term "unborn child" is unconstitutionally vague. Effective May 6, 2002, the legislature inserted "at any stage of its development" after the term "unborn child." Utah Code Ann. § 76-5-201(1)(a) (Supp.2003). Hence, the statute now reads that "[a] person commits criminal homicide if he . . . causes the death of another human being, including an unborn child *at any stage of its development."* *Id.* (emphasis added).

¶ 24 Although we acknowledge that the statute is now more precise, this does not mean that the statute prior to amendment was unconstitutionally vague. Indeed, the United States Supreme Court has stated that "[t]he fact that Congress might, without difficulty, have chosen '[c]learer and more precise language' equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States v. Powell,* 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) (quoting *United States v. Petrillo,* 332 U.S. 1, 7, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947)). Here, the legislature drafted a statute that achieved the end that it sought, namely, to include an unborn child within the definition of a human being for purposes of the criminal homicide statute. While adding the phrase "at any stage of its development" made the statute more precise, it did not alter the commonsense meaning of "unborn child." We therefore conclude that the term "unborn child" provides the kind of notice that enables ordinary people to understand what conduct is statutorily prohibited.

4. The Term "Unborn Child" Does Not Render the Aggravated Murder Statute Unconstitutionally Vague

¶ 25 Finally, defendant contends that because the term "unborn child" fails to provide adequate notice concerning what conduct is proscribed, it renders the aggravated murder statute unconstitutionally vague. We disagree.

¶ 26 The criminal homicide statute expressly includes an unborn child within its definition of a human being. Utah Code Ann. § 76-5-201(1)(a) (1999). This definition of a human being is imported into the aggravated murder statute because of the statutory link between the criminal homicide statute and the aggravated murder statute.

¶ 27 Specifically, the aggravated murder statute provides that *"[c]riminal homicide* constitutes aggravated murder if the actor intentionally or knowingly causes the death of *another"* under any one of seventeen circumstances, including killing two or more *persons* during the same criminal episode. Utah Code Ann. § 76-5-202(1)(b) (1999) (emphasis added).

¶ 28 Defendant argues that because the term "unborn child" is not defined in the criminal homicide statute, it also renders the terms "another" and "persons" in the aggravated murder statute unconstitutionally vague because it is impossible to know when an unborn child achieves the status of a human being. Because we have already concluded, however, that the term "unborn child" provides the kind of notice that enables ordinary people to understand what conduct is statutorily prohibited, the term cannot render the words "another" and "persons" unconstitutionally vague. We now turn to a discussion of defendant's second argument; namely, that the criminal homicide statute encourages arbitrary and discriminatory enforcement.

### C. Defining Conduct Sufficiently to Preclude Arbitrary and Discriminatory Enforcement

¶ 29 In addition to providing adequate notice about what conduct is proscribed, the "void for vagueness" doctrine requires the legislature to "define the criminal offense ... in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (citations omitted). In other words, the legislature must " 'establish minimal guidelines to govern law enforcement.' " *Id.* at 358, 103 S.Ct. 1855 (quoting *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).

¶ 30 Here, defendant contends that "[t]he Legislature's failure to clearly and specifically define the term 'unborn child' not only encourages but facilitates arbitrary and discriminatory enforcement" because "the prosecutor is left to speculate at what point an unborn child becomes a person for enforcement purposes." Additionally, defendant contends that enforcement decisions will be made "at least in part, by the prosecutor's own thoughts or beliefs concerning fetal rights," because the statute fails to provide adequate guidance.

¶ 31 This argument fails for the same reason that defendant's argument concerning adequacy of notice fails. Defen-

dant's argument is premised on the notion that the legislature had to define the term "unborn child" in order for the term to have a definite meaning. The "void for vagueness" doctrine does not, however, require a legislature to define terms that are readily ascertainable. Because the term "unborn child" has a straightforward definition, as we have discussed above, a prosecutor is not left to speculate as to the statute's meaning. Thus, the legislature adequately established minimal guidelines for the enforcement of the statute. We therefore conclude that the statute is not unconstitutionally vague either facially or as applied because it does not encourage or facilitate arbitrary and discriminatory enforcement.

¶ 32 In sum, we conclude that the term "unborn child" is not unconstitutionally vague because, absent modifying language to the contrary, it clearly encompasses a human being at any stage of development in utero. The statute thus provides adequate notice to an ordinary person about what conduct is proscribed. Moreover, because the meaning of the term is readily ascertainable, its inclusion does not encourage or facilitate arbitrary and discriminatory enforcement. Hence, the criminal homicide and aggravated murder statutes are sufficiently clear as applied to the defendant and cannot be considered "impermissibly vague in all [their] applications." Indeed, given our plain, commonsense reading of the term "unborn child," it is difficult to imagine any circumstance in which the meaning would be unclear. Thus, defendant's vagueness challenges fail, both facially and as applied, and we affirm the decision of the district court on this issue.

### III. EQUAL PROTECTION

¶ 33 In addition to challenging the criminal homicide and aggravated murder statutes for vagueness, defendant contends the statutes violate equal protection guarantees under the Fourteenth Amendment to the United States Constitution and article 1, section 24 of the Utah Constitution. Specifically, defendant contends that because physicians are not prosecuted for aborting fetuses and microbiologists are not prosecuted for

destroying fertilized embryos for stem cell research, the statute "does not apply equally to all persons within the class," namely, those who cause the death of an unborn child. Hence, according to defendant, the statute is unconstitutional.

¶ 34 The State argues that we should not address defendant's argument because he did not raise it before the district court. Although we note that defendant did make reference to equal protection guarantees in his motion to dismiss, we need not address whether such references were sufficient to preserve this issue for appeal because defendant failed to petition for interlocutory review of the issue.

¶ 35 Rule 5 of the Utah Rules of Appellate Procedure specifies that "[a]n appeal from an interlocutory order may be sought ... by filing a petition for *permission* to appeal from the interlocutory order." Utah R.App. P. 5(a) (emphasis added). The petition must contain "[t]he issue presented" and a "concise analysis of the statutes, rules[,] or cases believed to be determinative of the issue stated." *Id.* at 5(c)(1)(B)-(C).

¶ 36 Here, defendant's petition for interlocutory appeal did not address the equal protection issue. We therefore did not grant permission for defendant to appeal this issue. Moreover, because the petition made no reference to the equal protection argument, and did not provide a concise analysis of the legal authority, the State was denied the opportunity to respond to this issue in its Opposition to Petition for Permission to Appeal from Interlocutory Order. We therefore decline to address defendant's equal protection argument.

## CONCLUSION

¶ 37 In summary, the term "unborn child" does not render Utah's criminal homicide and aggravated murder statutes unconstitutionally vague. The criminal homicide statute provides that a person may be prosecuted for causing the death of a human being, including an unborn child. Because the common-sense meaning of the term "unborn child" is a human being at any stage of development in utero, the term provides sufficient notice

to an ordinary person about what conduct is proscribed. Moreover, the term does not encourage arbitrary and discriminatory enforcement because its meaning is readily ascertainable. Consequently, we conclude that the term "unborn child" does not render the criminal homicide statute unconstitutionally vague. We also conclude that the terms "another" and "persons" are not rendered unconstitutionally vague in the aggravated murder statute by the fact that they encompass the term "unborn child." We therefore affirm the district court on this issue.

¶ 38 We decline to address defendant's equal protection argument. Although there is some question concerning whether defendant adequately raised this issue below, we need not determine whether the issue was adequately preserved because defendant did not petition for interlocutory review of his equal protection argument. As a result, we did not grant permission to defendant to appeal this issue and we decline to address it.

¶ 39 The district court's decision to deny defendant's motion to dismiss is affirmed.

¶ 40 Justice WILKINS, Justice PARRISH, and Judge NEHRING concur in Associate Chief Judge DURRANT's opinion.

PARRISH, Justice, concurring:

¶ 41 I join in both the reasoning and the holding of Associate Chief Justice Durrant's lead opinion. I write separately to address the issue raised by the dissenting opinion of Chief Justice Durham.

¶ 42 The Chief Justice agrees with the lead opinion's conclusion that the criminal homicide statute permissibly defines killing an "unborn child" as a homicide, but dissents with respect to whether the defendant may be prosecuted for aggravated murder. The dissent is predicated on the notion that a fetus is not a full legal "person" under the laws of the United States or the laws of Utah. Accordingly, because the aggravated murder statute, Utah Code Ann. § 76-5-202 (1999), provides that homicide is aggravated murder if committed incident to a scheme or course of conduct during which two or more "persons" are killed, the dissent concludes

that the defendant may not be prosecuted for aggravated murder.

¶ 43 I disagree with the conclusion urged by the dissent for two reasons. First, when read in context, the term "person" as used in the aggravated murder statute is clearly intended to include an unborn child, and I do not believe this presents a constitutional problem because it does not infringe on any constitutionally protected rights. Second, the defendant would nevertheless be subject to prosecution for aggravated murder under a provision of the aggravated murder statute not addressed in the dissent.

¶ 44 The dissent is based on the premise that the word "person" in the aggravated murder statute was intended by the legislature to constitute a term of art with a meaning independent of the statutory scheme as a whole. In my view, however, the term "person" as used in the aggravated murder statute, constitutes only a generic reference back to the statutory provision defining the elements of criminal homicide, Utah Code Ann. § 76–5–201. In that section, the legislature unmistakably provided that causing the death of a human being, including an unborn child, constitutes homicide. The following section builds upon the criminal homicide statute by designating the circumstances under which "criminal homicide" constitutes "aggravated murder." Accordingly, when considered in context, it is clear that the term "person" in the aggravated murder statute must be interpreted to include an unborn child.[1]

¶ 45 Interpreting the term "person" in light of the statutory context and clearly expressed legislative intent is consistent with long-established principles of statutory construction. " 'One of the cardinal principles of statutory construction is that the courts will look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with the subject.' " *Mountain States Tel. & Tel. Co. v. Payne*, 782 P.2d 464, 466 (Utah 1989) (quoting *Masich v. U.S. Smelting*, 113 Utah 101, 191 P.2d 612, 616 (1948)). Indeed, the dissent's singular focus on the word "person" as a term of art is inconsistent with the fundamental principle that words are to be determined in light of their association with surrounding words and phrases and in harmony with other statutes in the same chapter. *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592.

¶ 46 For similar reasons, I am not persuaded by the dissent's concern that interpreting the term "person" to include an unborn child would raise federal constitutional issues. The dissent implies that any statute that defines the term "person" to include an "unborn child" would necessarily run afoul of the federal Constitution, without regard to the context in which that definition occurs or the consequences that flow from that definition. I do not agree with this principle.

¶ 47 Our interpretation of the term "person" in the context of the particular statutory scheme before the court neither implies that the rights of a fetus are equivalent to those of a person for purposes of federal constitutional analysis nor mandates the conclusion that the term "person" is used in an unconstitutional manner. I believe the legislature's use of the word "person" to refer to a fetus would create a clear constitutional issue only if it carried with it a restriction of a constitutionally protected right, such as in the context of a statute restricting a woman's right to terminate her pregnancy. An entirely different context is presented where, as here, a third party is accused of attacking and killing a fetus against the will of the mother. *See State v. Merrill*, 450 N.W.2d 318, 321–22 (Minn.1990) (holding that a fetal homicide statute does not impinge directly or indirectly on a pregnant woman's privacy rights); *66 Fed. Credit Union v. Tucker*, 853 So.2d 104, 113–14 (Miss.2003) (holding that a wrongful death statute protects a fetus, and that the rights of a mother as outlined in *Roe*

---

1. The dissent points out that, in a variety of contexts, the term "person" has been interpreted not to include a fetus or unborn child. While this is true, there is nothing that requires the term "person" in one context to be interpreted co-extensively with the term "person" when used in an entirely different context. In light of the clearly expressed legislative intent, I see no constitutional impediment to interpreting the term "person" to include an "unborn child" in the context of this particular statutory provision.

*v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), have no relation to the rights of a defendant accused of causing the death of a fetus); *People v. Ford*, 221 Ill. App.3d 354, 163 Ill.Dec. 766, 581 N.E.2d 1189, 1199 (1991) (holding that a pregnant woman who chooses to terminate her pregnancy and a defendant who assaults a pregnant woman, causing the death of her fetus, are not similarly situated). This statute's use of the term "person" to refer to a fetal victim defines the crime of aggravated murder. It does not declare a fetus to be a person entitled to equal protection, nor does it restrict a woman's right to obtain an abortion. In fact, there is no possibility that the statute in question could undermine a woman's right to obtain an abortion under the federal Constitution because the statute specifically provides that there "shall be no cause of action for criminal homicide for the death of an unborn child caused by an abortion." Utah Code Ann. § 76–5–201(1)(b) (1999 & Supp.2003).

¶ 48 I am unpersuaded by the dissent's conclusion that the defendant should not be subject to prosecution for aggravated murder for an independent reason as well. The dissent focuses on the portion of subsection (1)(b) of the aggravated murder statute that refers to homicides committed incident to one act, scheme, or course of conduct in which "two or more persons were killed." Utah Code Ann. § 76–5–202(1)(b) (1999). However, even if we were to assume that the defendant could not be prosecuted under that portion of subsection (1)(b), it is my view that the defendant would be subject to prosecution under the second clause of that same subsection. Subsection (1)(b) reads in its entirety:

(1) Criminal homicide constitutes aggravated murder if the actor intentionally or knowingly causes the death of another under any of the following circumstances:

. . .

(b) the homicide was committed incident to one act, scheme, course of con-

duct, or criminal episode during which two or more persons were killed *or during which the actor attempted to kill one or more persons in addition to the victim who was killed* [.]

Utah Code Ann. § 76–5–202 (1999) (emphasis added). In this case, the defendant has been charged with the criminal homicide of an unborn child pursuant to section 76–5–201. When the unborn child is understood to be the "victim" of the homicide, that unborn child was killed during an alleged criminal episode in which the defendant allegedly attempted to kill one or more persons, in this case Susan MacGuire, in addition to the unborn victim. Accordingly, the defendant may be tried for aggravated murder under section 76–5–202(1)(b).[2]

¶ 49 I believe that the statutory provisions addressing aggravated murder must be interpreted in the context of the statutory framework as a whole. Accordingly, I have no difficulty concluding that the term "person" as used in the aggravated murder statute includes an unborn child. I therefore concur in Associate Chief Justice Durrant's conclusion that the defendant may appropriately be prosecuted for aggravated murder.

¶ 50 Associate Chief Justice DURRANT, Justice WILKINS, and Judge NEHRING concur in Justice PARRISH's concurring opinion.

¶ 51 Justice RUSSON did not participate herein; then District Judge NEHRING sat.

DURHAM, Chief Justice, dissenting:

¶ 52 I respectfully dissent. Defendant is charged with shooting and killing his pregnant ex-wife and her fetus. While these acts constitute two homicides within the meaning of section 76–5–201, a charge of aggravated murder based on the killing of Ms. MacGuire and her fetus cannot be sustained as the killing of two "persons" under Utah Code section 76–5–202(1)(b).

*I. Section 76–5–201*

¶ 53 Pursuant to the language of section 76–5–201(1), "caus[ing] the death of another

---

**2.** The fact that subsection (1)(b) uses the terms "victim" and "person" in a seemingly interchangeable manner bolsters my conclusion that the term "person" as used in that subsection was not intended by the legislature to constitute a

term of art, but rather a generic reference to a human being, including an unborn child, as used in the criminal homicide statute, Utah Code Ann. § 76–5–201.

human being, including an unborn child" is homicide, except that if the death is caused by abortion it is not homicide. Utah Code Ann. § 76-5-201(1) (1999). Defendant contends that this provision is unconstitutionally vague. I agree with the majority that the statutory language is not so unclear as to violate minimal constitutional requirements.

¶ 54 The term "unborn child" is not defined in the statute and is not entirely clear in ordinary or legal usage. In our society, the moral status of the fetus is highly controversial. For many, a fetus, especially in the early stages of pregnancy, exists in a liminal state, somewhere between fully human and not human. Our fellow citizens disagree radically over when in this period of developing life an egg and sperm combined have matured enough to warrant moral or legal consideration as a person or a full human being.

¶ 55 Some Americans, attempting to make sense of the difficult issues surrounding family responsibility and abortion, reserve the word "child" for infants who have been born, or begin to refer to a fetus as a "child" only at the point at which they believe there is a reasonable likelihood that it will be born. Thus, for example, one commentator contends that in the view of many Americans, "child" refers to a member of the family. *See* Daniel JH Greenwood, *Beyond Dworkin's Dominions: Investments, Memberships, the Tree of Life, and the Abortion Question,* 72 Tex. L.Rev. 471 (1994) (disputing Professor Dworkin's view that no one believes that a fetus is a moral "person" and arguing instead that a wide variety of religious and secular observers see the fetus as developing into a "person" and becoming entitled to more rights and consideration over time, while others see varying moments, ranging from the sex act to birth, when those rights attach). Families have a period of time after pregnancy has begun in which they still may legally reject the responsibility of raising a child—something that is *morally* impermissible once they accept the developing fetus as a child. In that usage, an "unborn child" would refer only to a wanted pregnancy sufficiently far developed to be likely to come to term. To apply Utah's statute from that perspective, a prosecutor would be required to prove that the mother had, in fact, decided not to abort and that the pregnancy was reasonably likely to come to term. Hence the moral ambiguity of the term "unborn child" in the statute.

¶ 56 A statute that used the word "fetus" rather than "unborn child" would be clearer and more respectful of the diversity of opinion in our society. Nonetheless, the legislature is entitled to use polemical and political language, even on highly controversial issues, so long as the language gives clear notice of what is intended to be criminalized. The word "child" clearly includes the unborn in such ancient phrases as "quick with child"; indeed, the Oxford English Dictionary reports that it appears to be descended from a word specifically referring to the womb rather than an infant. The modern usage of "unborn child," I believe, reflects less an attempt (like Professor Greenwood's) to make sense of how so many Americans can support legal abortion while also believing that mothers have a duty to care for their children even pre-natally, than the desire of those who oppose abortion to find new linguistic opportunities to emphasize respect for the fetus. In the context of this case, I agree with the majority that it is sufficiently clear that the legislature meant to classify the killing of every fetus as a homicide and that ordinary citizens will understand that intent. Section 76-5-201 therefore passes "void for vagueness" muster.

## II. Section 76-5-202(1)(b)

¶ 57 Section 76-5-202(1)(b), however, is a different matter. It provides that homicide is aggravated murder if "the homicide was committed incident to one act, scheme, course of conduct, or criminal episode during which two or more *persons* were killed." Utah Code Ann. § 76-5-202(1)(b) (1999) (emphasis added). As discussed below, a fetus is not a full legal "person" and cannot be so constituted under the law of the United States or Utah. The plain meaning of section 76-5-202(1)(b) is that killing a mother and her fetus cannot constitute aggravated homicide.

¶ 58 Preliminarily, it is clear that the legislature is entitled to protect to the fullest

extent pregnant mothers and their expectations of bringing their pregnancies to term. Even supporters of legal abortion agree that an assault which destroys a developing fetus is a particularly heinous crime. *See, e.g., Beyond Dworkin's Dominions, supra,* at 489. A violent attack by a third person on a mother that also kills her fetus injures more than the mother alone. One of the most fundamental of life's experiences has been cut short; parents' aspirations to bring forth a new generation have been shattered; a family that could have been will not be; a life that could have developed into an independent individual has been extinguished. We need not enter into any debate regarding the status of the fetus itself to see that a state may freely increase penalties for a homicide or an assault that also kills a fetus: respect for the mother alone would be sufficient. The power of the legislature to classify a homicide that also unlawfully destroys a fetus as aggravated murder, then, is not at issue here. The problem is, rather, that the legislature has not clearly done so. The aggravated homicide statute applies when two "persons" are killed, and a fetus is not a person under our law.

¶ 59 "Person" is a legal category with important consequences. Most important, persons are entitled to rights under the Fourteenth Amendment of the United States Constitution. It would be an obvious denial of equal protection to allow doctors, or anyone else, to kill one "person" in order to save another, and clearly a denial of due process to permit this without any legal process at all. Thus, declaring a fetus to be a "person" entitled to equal protection would require not only overturning *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), but also making abortion, as a matter of constitutional law, illegal in all circumstances, even to save the life of the mother.[1] Utah law reflects this principle. The legislature has stated that "a woman's liberty interest, in limited circumstances, may outweigh the unborn child's right to protection," and has specified when abortion is warranted. Utah

Code Ann. § 76–7–301.1(4) (1999). A fortiori, if a fetus were deemed a legal "person," its life could not be taken intentionally in the process of honoring a pregnant woman's "liberty interest." *Roe,* 410 U.S. at 157 n. 54, 93 S.Ct. 705 n. 54.

¶ 60 For these reasons, as Justice Stevens has stated,

[N]o member of the Court has ever questioned this fundamental proposition [i.e., that a fetus is not a "person"]. Thus as a matter of federal constitutional law, a developing organism that is not yet a "person" does not have what is sometimes described as a "right to life." This has been and ... remains a fundamental premise of our constitutional law ....

*Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 913, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (Stevens, J., concurring in part and dissenting in part).

¶ 61 To declare a fetus a "person" is beyond the power of the state of Utah, whether acting through either its legislature or its courts. A state cannot overrule the United States Supreme Court by changing who counts as a "person" for constitutional purposes. Justice Stevens, quoting Professor Dworkin, put it this way:

The suggestion that states are free to declare a fetus a person ... assumes that a state can curtail some [existing] persons' constitutional rights by adding new persons to the constitutional population. The constitutional rights of one citizen are of course very much affected by who or what else has constitutional rights, because the rights of others may compete or conflict with his. So any power to increase the constitutional population by unilateral decision would be, in effect, a power to decrease the rights the national Constitution grants to others.

*Id.* at 913 n. 2, 112 S.Ct. 2791 n. 2 (quoting Ronald Dworkin, *Unenumerated Rights: Whether and How Roe Should be Overruled,* 59 U. Chi. L.Rev. 381, 400–01 (1992)).

---

1. The due process and equal protection clauses state, in relevant part, "nor shall any State deprive any *person* of life, liberty or property, without due process of law; nor deny to any *person* within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, cl. 1 (emphasis added).

¶ 62 Finally, even if the Utah Legislature could define "person" to include a fetus, which I believe it cannot, the legislature does not seem to have done so. At any rate, no statutory language defining "person," as opposed to "unborn child" or "human being" has been cited to us.

¶ 63 If a fetus is not a "person" in the language of the law, it follows that the defendant in this case, heinous as his crime is, has not committed aggravated murder within the meaning of Utah Code section 76–5–202(1)(b). That provision applies only when "two or more persons were killed." In the case at hand, two lives were extinguished: that of Ms. MacGuire and that of the fetus she was carrying. Under Utah law, these two killings may each be prosecuted as separate homicides, but only one "person" was killed. Defendant cannot be prosecuted for killing two or more "persons," when only one of his victims was a "person." I do not believe defendant can be tried for aggravated murder under section 76–5–202(1)(b).