2011 UT App 443

STATE of Utah, Plaintiff and Appellee,

v.

Benson MANWARING, Defendant and Appellant.

No. 20090546–CA.

Court of Appeals of Utah.

Dec. 30, 2011.

Randall T. Gaither, Salt Lake City, for Appellant.

Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## OPINION

ORME, Judge:

¶ 1 Defendant Benson Manwaring appeals his conviction for driving under the influence of alcohol (DUI), *see* Utah Code Ann. § 41–6a–502(1)(a) (2010), a third degree felony, *see id.* § 41–6a–503(2). On appeal, Defendant contends that the trial court erred in denying his motion to suppress, refusing to allow his expert witness to testify and limiting the scope of his cross-examination of the State's expert, and concluding that subsection (1)(a) of section 41–6a–502 (the DUI statute) is not unconstitutionally vague. We affirm.

## BACKGROUND [1]

¶ 2 On June 19, 2005, Defendant was driving his motorcycle on State Street in Provo. As Defendant attempted a left turn, an oncoming vehicle veered out of its lane and struck Defendant. Defendant injured his leg in the collision. Emergency responders arrived on the scene and placed Defendant in the back of an ambulance for treatment. Police officer Kreston Bascom also arrived on the scene and began investigating the accident. Upon approaching Defendant, Officer Bascom testified that he "smelled alcohol on [Defendant's] breath" and suspected that he had been drinking. Officer Bascom asked Defendant if he had been drinking, and Defendant responded that he had a few drinks "much earlier." Officer Bascom then called for backup to investigate Defendant for DUI.

¶ 3 In response, Officer Joshua Jennings arrived at the scene and began conducting a DUI investigation of Defendant. Officer

---

1. Except as noted, "[w]e recite the facts in the light most favorable to the [trial court's] findings." *See State v. Despain,* 2007 UT App 367, ¶ 2 n. 1, 173 P.3d 213 (citation and internal quotation marks omitted). And while there have been amendments to the relevant provisions of the Utah Code subsequent to the date of Defendant's offense, they have no bearing on the issues presented. Accordingly, as a convenience to the reader, we cite to the current version of the Utah Code throughout this opinion.

Jennings also noticed a strong odor of alcohol emanating from Defendant. Officer Jennings observed three unopened cans of beer on the ground near Defendant's damaged motorcycle. Because he did not have a portable breath test (PBT) device or a DUI citation form with him at the accident scene, Officer Jennings did not immediately administer any sobriety tests.

¶ 4 While emergency responders transported Defendant to the hospital, Officer Jennings retrieved a PBT device and a DUI citation form from the police station and proceeded to the emergency room where Defendant had been taken. When he arrived at the hospital, Officer Jennings asked Defendant if he would submit to sobriety tests. Defendant indicated that he would. Because of Defendant's leg injury, Officer Jennings did not have Defendant perform tests requiring mobility, such as the "walk-and-turn" test or the "one-leg-stand" test. Officer Jennings did, however, administer the horizontal gaze nystagmus test to Defendant. This test measures a person's ability to track an object with his or her eyes. In an impaired person, according to testimony in this case, a noticeable "bouncing in the eyes" will occur as the person attempts to track an object. The investigating officer "observed nystagmus in both [of Defendant's] eyes at the maximum deviation." This was sufficient, according to the officer, for him to conclude that Defendant likely had a blood alcohol concentration (BAC) above the legal limit of .08 at the time of the test.

¶ 5 Officer Jennings then asked Defendant to take a PBT. Defendant indicated he was willing to take the test, which Officer Jennings then administered. The PBT device measured Defendant's BAC at .107 grams, which Officer Jennings recorded. Officer Jennings testified, however, that he did not rely on the PBT for an exact measurement of Defendant's BAC. Rather, he relied on the PBT merely to confirm the presence of a significant level of alcohol in Defendant's system. Officer Jennings then placed Defendant under arrest.

¶ 6 After the arrest, Officer Jennings read Defendant the admonitions contained in the implied consent statute, *see* Utah Code Ann. § 41–6a–520 (2010), and asked Defendant if he would submit to a blood test. Defendant responded, "That's okay." A forensic nurse arrived at the hospital at 11:55 p.m., approximately two-and-a-half hours after the accident, and drew a sample of Defendant's blood. The State forensic toxicology lab performed four tests on Defendant's blood sample, yielding BAC results of .105, .105, .106, and .107. Pursuant to policy, the lab rounded down from the lowest score, reporting that Defendant had a BAC of .10 at the time of the blood test. Defendant was then charged with one count of DUI in violation of Utah Code section 41–6a–502.

¶ 7 Before trial, Defendant filed a motion to suppress, contending that he had been illegally compelled to submit to the PBT[2] and that, as a result, all evidence from the PBT forward should be suppressed. The trial court rejected Defendant's argument and concluded, based on the testimony of the police officers, that Defendant voluntarily consented to the PBT.

¶ 8 Defendant also provided notice that he intended to call an expert witness to testify about his blood-alcohol level at the time he was driving his motorcycle just before the accident. The State objected to the introduction of Defendant's proposed expert testimony. The trial court ultimately determined that because Defendant was being charged under subsection (1)(a) of the DUI statute, which, the trial court concluded, focuses solely on a person's BAC at the time of a chemical test subsequent to driving, *see* Utah Code Ann. § 41–6a–502(1)(a), and not on a person's BAC at the time of driving, *see id.* § 41–6a–502(1)(c), the proposed expert testimony would be irrelevant. The district court likewise prohibited Defendant from asking the State's toxicology expert about blood-alcohol absorption rates because it deemed such testimony irrelevant under subsection (1)(a), *see id.* § 41–6a–502(1)(a).

¶ 9 Defendant also argued before trial that subsection (1)(a) of the DUI statute, *see id.*,

---

2. According to Defendant, while he was being treated in the ambulance, Officer Bascom told him that he would go to jail if he refused to submit to the PBT.

is unconstitutionally vague. The trial court rejected this challenge. Following a jury trial, Defendant was convicted of one count of DUI. He now appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 First, Defendant argues that the trial court erred when it denied his motion to suppress. "A trial court's ruling on a motion to suppress is reviewed for correctness, including its application of the law to the facts." *State v. Tripp*, 2010 UT 9, ¶ 23, 227 P.3d 1251. However, "[t]he trial court's underlying factual findings are reviewed under the clearly erroneous standard." *Id.*

■ ¶ 11 Next, Defendant claims that the trial court deprived him of his constitutional right to present a defense by refusing to allow his expert to testify and limiting the scope of his cross-examination of the State's expert. "[W]e review a trial court's decision to exclude expert testimony for an abuse of discretion." *State v. Holm*, 2006 UT 31, ¶ 10, 137 P.3d 726, *cert. denied*, 549 U.S. 1252, 127 S.Ct. 1371, 167 L.Ed.2d 159 (2007). "When reviewing a trial court's decision to limit cross-examination, we review the legal rule applied for correctness and the application of the rule to the facts of the case for an abuse of discretion." *State v. Chavez*, 2002 UT App 9, ¶ 17, 41 P.3d 1137.

■ ¶ 12 Finally, Defendant contends that the trial court erred in rejecting his vagueness challenge to subsection (1)(a) of the DUI statute, *see* Utah Code Ann. § 41–6a–502(1)(a) (2010). We review constitutional challenges for correctness. *See State v. Shepherd*, 1999 UT App 305, ¶ 8, 989 P.2d 503.

## ANALYSIS

### I. Motion to Suppress

¶ 13 Defendant claims that all evidence from his pre-arrest PBT and all evidence generated thereafter should have been suppressed for two reasons. First, Defendant argues that he did not validly consent to the pre-arrest PBT. Second, Defendant seems to argue that PBTs are inherently unreliable and, therefore, that the investigating officer should not have relied on Defendant's PBT results to establish probable cause. We reject both claims.

### A. Consent

¶ 14 Defendant first argues that he did not give valid consent to the pre-arrest PBT. Specifically, Defendant asserts that his consent was not voluntary because a police officer threatened him with jail if he refused to submit to the test. Defendant also contends that administration of the pre-arrest PBT was illegal under the implied consent statute. *See* Utah Code Ann. § 41–6a–520.

■ ¶ 15 "The Fourth Amendment ensures '[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures.'" *State v. Tripp*, 2010 UT 9, ¶ 26, 227 P.3d 1251 (alteration in original) (quoting U.S. Const. amend. IV). A breath test administered by a police officer constitutes a search under the Fourth Amendment. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616–17, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). "A warrantless search is per se unreasonable unless the search falls within one of the few 'specifically established and well-delineated exceptions.'" *Tripp*, 2010 UT 9, ¶ 26, 227 P.3d 1251 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). A search based on consent is one such exception. *See id.* To determine whether consent is valid, we use a two-pronged analysis: "[C]onsent is valid only if (1) the consent was given voluntarily, and (2) the consent was not obtained by police exploitation of [a] prior illegality." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

¶ 16 Defendant claims that he was compelled to submit to the PBT in the back of the ambulance after a police officer threatened him with jail if he refused. The trial court found, however, that no police officer ever threatened Defendant with jail if he refused to submit to the PBT. In fact, the trial court found that the investigating officer administered the PBT to Defendant at the hospital, not in the back of the ambulance as Defendant claims. We note that "[f]actual

findings underlying a motion to suppress are evaluated for clear error." *State v. Worwood*, 2007 UT 47, ¶ 12, 164 P.3d 397. Additionally, "parties challenging the facts under a clear error standard have a judicially imposed obligation to marshal the evidence in support of the challenged finding." *Id.*

¶ 17 Defendant has failed to marshal the evidence supporting the trial court's findings. *See id.* "We consequently accept the trial court's factual findings as conclusive." *Id. See Burton Lumber & Hardware Co. v. Graham*, 2008 UT App 207, ¶ 13, 186 P.3d 1012 (accepting a trial court's findings as conclusive where a defendant made "no real attempt to properly marshal the evidence"). Accordingly, we review the two prongs required for valid consent based on the trial court's findings of fact. Where necessary, "we also look to the record consistent with the district court's findings." *Worwood*, 2007 UT 47, ¶ 12, 164 P.3d 397.

### 1. Two–Part Test for Voluntary Consent

¶ 18 We first consider whether Defendant voluntarily consented to the pre-arrest PBT. "[F]or a defendant to voluntarily consent to a search the defendant must (A) actually consent to the search and (B) consent must be voluntary." *Tripp*, 2010 UT 9, ¶ 27, 227 P.3d 1251.

### a. Actual Consent

¶ 19 "Before a court addresses whether consent was voluntary, it must first determine that there was [actual] consent." *State v. Hansen*, 2002 UT 125, ¶ 48, 63 P.3d 650. "The existence of consent is a factual finding, and it is based on the totality of the circumstances." *Tripp*, 2010 UT 9, ¶ 30, 227 P.3d 1251.

¶ 20 The trial court found that Defendant did not object to taking the PBT test and agreed to take it when asked. Because the actuality of consent is a factual question and because Defendant has not properly challenged the district court's finding that he actually consented to the PBT, we accept the trial court's finding as conclusive. *See Worwood*, 2007 UT 47, ¶ 12, 164 P.3d 397.

### b. Voluntary Consent

¶ 21 While actual consent is a factual matter, "[t]he voluntariness of consent to a search is a legal conclusion, which is reviewed for correctness." *State v. Tripp*, 2010 UT 9, ¶ 36, 227 P.3d 1251 (citation and internal quotation marks omitted). "The appropriate standard to determine voluntariness is the totality of the circumstances test[.]" *Id.* (citation and internal quotation marks omitted). "The totality of the circumstances must show consent was given without duress or coercion ." *Hansen*, 2002 UT 125, ¶ 57, 63 P.3d 650. The Utah Supreme Court has identified five factors that may show a lack of duress or coercion:

> 1) the absence of a claim of authority to search by the officers; 2) the absence of an exhibition of force by the officers; 3) a mere request to search; 4) cooperation by [the Defendant]; and 5) the absence of deception or trick[ery] on the part of the officer.

*Id.* (citation omitted).

¶ 22 Relying on the trial court's factual findings, we conclude that Defendant voluntarily consented to the PBT. First, the officer requesting the PBT did not "claim any authority to do the [PBT] without [Defendant's] consent." Second, the investigating officer did not exhibit force when making his request. Specifically, the officer never displayed weapons or made any physical threat toward Defendant. Furthermore, the investigating officer did not threaten Defendant with jail if he refused to submit to the PBT, nor did the officer threaten to force the PBT with a warrant, restrict Defendant's movement beyond the restrictions imposed by medical personnel, or isolate him from the presence of others. *See Tripp*, 2010 UT 9, ¶¶ 42–43, 227 P.3d 1251 (concluding that an exhibition of force was present where the investigating officer threatened to force a blood withdrawal with a warrant, secured the suspect in the back of a police vehicle, and secluded the suspect from all outside contact). Indeed, Defendant was in a public, "curtain style room" at the hospital and his fiancée was in close proximity throughout the investigation. Third, the investigating officer made a mere request of Defendant, as he

"simply asked [D]efendant if he could administer ... the [PBT]." There is no evidence that this request was made more than once and no other officers were present when it was made. *See id.* ¶ 40 (holding that multiple requests by the investigating officers, at least once in the presence of other officers, constituted more than a "mere request"). Fourth, Defendant "fully cooperated" and blew into the PBT device when asked to do so. Fifth, there was no evidence of deception or trickery by the investigating officer. Thus, based on the totality of the circumstances, Defendant's consent to the PBT was not the product of coercion or duress and was, therefore, voluntary.

2. The Implied Consent Statute

¶ 23 Defendant may also establish that his consent to the PBT was not valid if it was "obtained by police exploitation of [a] prior illegality." *Hansen,* 2002 UT 125, ¶ 47, 63 P.3d 650 (citation and internal quotation marks omitted). Defendant contends that a prior illegality occurred here because the investigating officer violated his rights under the implied consent statute, *see* Utah Code Ann. § 41–6a–520 (2010), when he asked Defendant to submit to a PBT prior to being arrested. Under the implied consent statute, a person who operates a motor vehicle is presumed to have consented to a chemical test for purposes of determining whether that person had a BAC at or above the limits proscribed by the DUI statute. *See id.* § 41–6a–520(1)(a)–(c); *State v. Sterger,* 808 P.2d 122, 127 n. 6 (Utah Ct.App.1991). We conclude that Defendant's rights under the implied consent statute were not violated, and hence, no prior illegality occurred.

¶ 24 Defendant first argues that a PBT is a chemical test, as opposed to a standard field sobriety test, thereby triggering the provisions of the implied consent statute. He then acknowledges that the implied consent statute applies only after arrest. Consequently, Defendant concludes that "the administration of a chemical test prior to the

time that the person is placed under arrest violates [the implied consent statute] designed to allow compelled tests."

¶ 25 We agree with Defendant that "[p]rior to arrest the Utah implied consent law has no application." *See State v. Cruz,* 21 Utah 2d 406, 446 P.2d 307, 309 (1968) ("[T]he implied consent to a chemical test arises only upon arrest."). Thus, we need not consider Defendant's contention that the PBT constitutes a chemical test. Because Defendant took the PBT before he was arrested, the statute simply does not apply to him even if the PBT is properly regarded as a chemical test. Therefore, Defendant's rights under the statute were not violated and no prior illegality occurred. Furthermore, police officers may administer a pre-arrest chemical test as long as the individual validly consents. Indeed, Defendant has cited cases in his brief that support this proposition. *See id.* ("[A] person prior to arrest has not given his implied consent to a chemical test and, therefore, his actual consent must be given."); *In re R.L.I.,* 771 P.2d 1068, 1070 (Utah 1989) (reaffirming *Cruz* and holding that where a defendant's pre-arrest blood sample was not given pursuant to actual consent, blood test results must be suppressed).

¶ 26 We concluded earlier that Defendant's consent was actual and voluntary, consistent with the protections afforded him by the Fourth Amendment.[3] Because Defendant's pre-arrest PBT did not violate the implied consent statute, no prior illegality occurred that could have been exploited by law enforcement in obtaining Defendant's consent to the PBT. As a result, Defendant's consent satisfied the two elements required for valid consent, *see State v. Tripp,* 2010 UT 9, ¶ 26, 227 P.3d 1251 (describing the two-pronged analysis for determining whether consent is valid), and the trial court did not err by denying Defendant's motion to suppress on these grounds.

---

**3.** Defendant also argues that his Fifth Amendment rights were violated because he was in custody and not given *Miranda* warnings when the investigating officer asked him to submit to the PBT. Defendant, however, waived any claim

at the pretrial suppression hearing that he was in custody, and *Miranda* rights only attach in a custodial setting, *see State v. Gallegos,* 2009 UT 42, ¶ 25, 220 P.3d 136.

## B. PBTs and Probable Cause

¶ 27 Defendant also argues that PBTs are inherently unreliable and that the results of his PBT should, therefore, not have been used to establish probable cause. Accordingly, Defendant contends that all evidence obtained following his arrest should have been suppressed. The State insists that Defendant's argument is inadequately briefed. We agree with the State.

¶ 28 Defendant makes broad claims about the reliability of PBTs. Defendant fails, however, to identify a defect in the particular device used to administer his PBT. Further, Defendant's claim that PBTs are inherently unreliable is substantially undercut by the facts in this case. The PBT device used to administer Defendant's PBT recorded a BAC estimate of .107. Four tests of Defendant's blood conducted by the State toxicology lab yielded results of .105, .105, .106, and .107— virtually the same results as the allegedly unreliable PBT estimate. A pure coincidence between the PBT result and the results of the blood tests is, of course, theoretically possible, but this consistency of test results serves to underscore the magnitude of Defendant's briefing burden if he were to convince us of his claim that all PBTs are inherently unreliable.

¶ 29 Further, while there is indeed a split of authority regarding the use of PBTs to establish probable cause, *compare, e.g., United States v. Iron Cloud*, 171 F.3d 587, 590–91 (8th Cir.1999) (holding that PBTs may be used in probable cause determinations), *with Thompson v. State Dep't of Licensing*, 138 Wash.2d 783, 982 P.2d 601, 603 n. 1 (1999) (explaining that the results of PBTs are inadmissible to establish probable cause), Defendant does not refer to these conflicting deci-

sions, nor does he make any specific legal argument as to why we should adopt one line of reasoning over another.

¶ 30 Finally, Defendant ignores the alternative rationale outlined in the decision of the trial court: Even without considering the results of the pre-arrest PBT, probable cause existed to arrest Defendant. Accordingly, because Defendant's argument is not clearly presented or adequately supported, we decline to reach the merits of this issue.[4] *See* Utah R.App. P. 24(a)(9) (requiring that an appellant's brief contain "contentions and reasons" in favor of a claim, supported by citation to authority); *State v. Gomez*, 2002 UT 120, ¶ 20, 63 P.3d 72 (explaining that a "reviewing court is entitled to have the issues clearly defined with pertinent authority cited") (citation and internal quotation marks omitted).

## II. Expert Testimony and Cross–Examination

¶ 31 Defendant next claims that the trial court violated his due process right to a fair trial when it refused to allow his expert to testify and limited the scope of his cross-examination of the State's toxicology expert.

¶ 32 Before trial, the State stipulated that it was only pursuing conviction of Defendant under subsection (1)(a) of the DUI statute. *See* Utah Code Ann. § 41–6a–502(1)(a) (2010). Subsection (1)(a) of the DUI statute provides that

[a] person may not operate or be in actual physical control of a vehicle within this state if the person: (a) has sufficient alcohol in the person's body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08

---

4. Defendant also appears to argue that officers may only request a PBT of an individual if probable cause already exists to believe a DUI offense has occurred. This claim is likewise not developed through reasoned analysis, *see State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (requiring that appellate briefs contain "reasoned analysis" based on developed authority), and we decline to address it in detail other than to note that the case Defendant cites in his brief in support of his argument expressly holds that PBTs may be requested absent probable cause as long as the officer has a reasonable suspicion

that a DUI offense has occurred. *See State v. Whitney*, 889 N.E.2d 823, 829 (Ind.Ct.App.2008). Likewise, we note that the Utah Supreme Court has implicitly accepted this position as well. In *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968), the Supreme Court held that a pre-arrest chemical test was valid if obtained pursuant to actual consent. *See id.* at 309. From this holding, it is logical to infer that an officer must be allowed to request consent to a pre-arrest chemical test in order to obtain such consent, even absent probable cause to arrest.

grams or greater *at the time of the test*....

*Id.* (emphasis added). The trial court concluded that this section does not refer to a person's BAC at the time the person operated or controlled a vehicle. Accordingly, the district court prohibited Defendant from calling his expert witness to testify about what his BAC could have been at the time of the accident or from questioning the State's toxicology expert about blood-alcohol absorption rates, apparently with an eye to suggesting his BAC would have been lower than .08 at the time he was driving.[5] Defendant, however, contends on appeal that, in order to prove a DUI offense, the State must prove that a defendant was actually under the influence when he was driving. We agree with the trial court.

¶ 33 "When interpreting statutes, we first look to the plain language of the statute and give effect to that language unless it is ambiguous." *State v. Jeffries*, 2009 UT 57, ¶ 7, 217 P.3d 265. Moreover, we read a statutory provision "literally, unless it would result in an unreasonable or inoperable result." *Id.*

██ ¶ 34 Subsection (1)(a) of the DUI statute requires the State to prove that, as shown by a chemical test taken subsequent to the defendant's operation or control of a vehicle, the defendant had a "blood or breath alcohol concentration of .08 grams or greater *at the time of the test.*" Utah Code Ann. § 41–6a–502(1)(a) (emphasis added). Subsection (1)(a) plainly does not require the State to establish that a person had a BAC of .08 or greater at the time he or she operated or controlled a vehicle.[6] Accordingly, a literal reading of the statute reveals that under subsection (1)(a), Defendant's BAC at the time he operated or controlled a vehicle is irrelevant to whether Defendant had the requisite BAC at the time of the subsequent chemical test.[7] *See id.*

¶ 35 We now address whether the trial court erred by prohibiting Defendant from calling his expert witness and limiting the scope of Defendant's cross-examination of the State's toxicology expert, given the plain meaning of subsection (1)(a) of the DUI statute.[8] We also address whether the trial court denied Defendant his due process right to a fair trial by limiting the manner in which he could present his defense.

## A. Expert Testimony

¶ 36 "A decision to admit or exclude expert testimony is left to the discretion of the trial

---

**5.** Defendant also proposed to have his expert testify regarding the possibility that his post-accident medical care could have introduced alcohol into his system, thereby causing his elevated BAC. The trial court found that Defendant's expert was not qualified to testify regarding any "medical issues." Although Defendant mentions this issue in his brief, he does not directly challenge the trial court's decision on appeal.

**6.** A different subsection focuses on BAC at the time of driving. *See* Utah Code Ann. § 41–6a–502(1)(c) (2010) (requiring the State to prove that a defendant "ha[d] a blood or breath alcohol concentration of .08 grams or greater *at the time of operation or actual physical control*" of a vehicle) (emphasis added).

**7.** We also note that interpreting subsection (1)(a) to require the State to prove that a defendant had a BAC of .08 or greater at the time of driving would render subsection (1)(a) superfluous because subsection (1)(c) already provides a means of conviction for those who drive with a BAC of .08 or greater, *see* Utah Code Ann. § 41–6a–502(1)(c) (2010). We reject Defendant's invitation to interpret subsection (1)(a) in a manner that "would render portions of the statute redun-

dant, superfluous, and inoperable." *State v. Bluff*, 2002 UT 66, ¶ 35, 52 P.3d 1210, *cert. denied*, 537 U.S. 1172, 123 S.Ct. 999, 154 L.Ed.2d 914 (2003).

**8.** Defendant also claims that the trial court's alleged error in excluding his expert testimony and limiting the scope of cross-examination was compounded by the court's rejection of his proposed jury instruction, which instructed the jury that in order to find Defendant guilty, the State had to prove that he had a BAC of .08 or greater at the time he was driving his motorcycle. While this claim could be rejected as inadequately briefed, *see Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903 (explaining that in order to avoid being labeled inadequately briefed, a claim must be developed through reasoned analysis), we note that this claim would fail for the same reason Defendant's other claims in this section fail: Defendant's BAC at the time of driving is irrelevant to establishing that he had the requisite BAC for conviction under subsection (1)(a) of the DUI statute. *See* Utah Code Ann. § 41–6a–502(1)(a) (2010). *See also Bluff*, 2002 UT 66, ¶ 23, 52 P.3d 1210 (upholding a trial court's rejection of a defendant's proposed jury instruction where that instruction misstated the law).

court, and that decision will not be reversed unless it constitutes an abuse of discretion." *State v. Holm*, 2006 UT 31, ¶ 89, 137 P.3d 726. "Under this standard, we will not reverse [the trial court's decision] unless the decision exceeds the limits of reasonability." *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993).

¶ 37 Under the Utah Rules of Evidence, "[e]xpert testimony is relevant and admissible if the testimony will assist the trier of fact to understand evidence or determine a fact in issue." R. Collin Mangrum & Dee Benson, *Mangrum & Benson on Utah Evidence* 131–32 (2009–10 ed.). *See* Utah R. Evid. 702. Here, Defendant's expert proposed to testify regarding a process by which an individual's BAC at the time that person operated or controlled a vehicle can be calculated by extrapolating backwards from a subsequent BAC test. Defendant sought to show through this testimony that his BAC may not have been at .08 at the time he was operating his motorcycle just prior to the accident. Because, as we have explained, Defendant's BAC at the time he operated his motorcycle was irrelevant to whether Defendant had the requisite BAC for conviction under subsection (1)(a), it was not a fact in issue, and consequently, expert testimony would not have aided the jury. *See Holm*, 2006 UT 31, ¶ 90, 137 P.3d 726 (affirming a trial court's decision to exclude expert testimony because it "would not have aided the jury in determining the questions before it and would more likely have distracted and confused the jury"). Accordingly, the trial court did not abuse its discretion by refusing to allow Defendant to call his proposed expert witness.

**B. Cross–Examination of the State's Expert**

¶ 38 A "defendant's right to confront witnesses is not absolute." *State v. Tarrats*, 2005 UT 50, ¶ 36, 122 P.3d 581. Trial courts "retain wide latitude to limit reasonably a criminal defendant's right to cross-examine a witness based on" questioning that is irrelevant. *Id.* (citations and internal quotation marks omitted). Indeed, evidentiary rules such as rule 402 of the Utah Rules of Evi-

dence, which requires that evidence must be relevant to be admissible, *see* Utah R. Evid. 402, "limit to some degree a defendant's ability to question witnesses and introduce evidence," *Tarrats*, 2005 UT 50, ¶ 36, 122 P.3d 581. "So long as impingements upon a defendant's constitutional rights … are not 'arbitrary or disproportionate to the purposes they are designed to serve,' they are constitutional." *Id.* (quoting *Stephens v. Miller*, 13 F.3d 998, 1002 (7th Cir.) (en banc), *cert. denied*, 513 U.S. 808, 115 S.Ct. 57, 130 L.Ed.2d 15 (1994)).

¶ 39 The trial court prohibited Defendant from asking the State's toxicology expert about blood-alcohol absorption rates. Defendant's purpose in asking the State's expert about blood-alcohol absorption rates was to show that Defendant's BAC could have continued to increase after the accident, and thus, that he might have had a BAC of less than .08 while he operated his motorcycle prior to the accident. As we have explained above, evidence of Defendant's BAC at the time he was operating his motorcycle is irrelevant to the determination of whether he had the requisite BAC at the time of the subsequent chemical test. As Defendant's cross-examination would have done no more than elicit inadmissible evidence, *see* Utah R. Evid. 402 ("Evidence which is not relevant is not admissible."), we conclude that the trial court's decision to limit cross-examination was neither arbitrary nor a disproportionate impingement on Defendant's right to cross-examine the State's toxicology expert and, therefore, did not constitute an abuse of discretion.

**C. Defendant's Constitutional Right to Present a Defense**

¶ 40 Defendant argues that by refusing to admit his expert's testimony and limiting the scope of cross-examination, the court deprived him of his due process right to a fair trial. Specifically, Defendant contends that the court's ruling eliminated a "traditional defense" used by DUI defendants of raising an inference that they did not have a BAC of .08 or greater at the time they operated a vehicle, even though they had such a BAC at a later point in time.

¶ 41 While Defendant has a constitutional right to present a meaningful defense, *see Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citation and internal quotation marks omitted), the United States Supreme Court has recognized that a trial court may constitutionally exclude irrelevant evidence or even "marginally relevant" evidence from criminal trials. *See id.* at 326, 126 S.Ct. 1727. *See also State v. Hobbs,* 2003 UT App 27, ¶ 26, 64 P.3d 1218 (holding that a trial court did not err in excluding evidence relating to an unavailable defense), *cert. denied,* 72 P.3d 685 (Utah 2003). Thus, although Defendant has a constitutional right to present a defense, he does not have a right to present an irrelevant defense. Consequently, because the testimony Defendant sought to present from his expert and on cross-examination of the State's expert was irrelevant to the elements of subsection (1)(a), the trial court did not unconstitutionally deny Defendant the right to present a defense. *See id.*

¶ 42 Furthermore, we note that although Defendant was not able to put forth his preferred "traditional defense," he nevertheless retained the ability to present a defense. Specifically, Defendant remained free to demonstrate a reasonable doubt as to the elements of the offense, question the reliability of the blood test,[9] attack the credibility of the State's expert, or challenge the chain of custody of the blood sample, among other defensive tactics. Thus, the trial court did not deprive Defendant of his constitutional right to present a defense.

### III. Constitutionality Issues

¶ 43 In his brief, and more clearly at oral argument, Defendant advanced the argument that subsection (1)(a) of the DUI statute, *see* Utah Code Ann. § 41–6a–502(1)(a) (2010), is unconstitutionally vague because it does not limit the amount of time that can pass between a person's operation or control of a motor vehicle and the subsequent chemical test that determines the person's BAC. Defendant raises both facial and as-applied vagueness challenges.

¶ 44 When a statute "implicates no constitutionally protected conduct, a court will uphold a facial vagueness challenge only if the [statute] is impermissibly vague in all of its applications." *State v. MacGuire,* 2004 UT 4, ¶ 12, 84 P.3d 1171 (alteration in original) (citation and internal quotation marks omitted). "A statute that is clear as applied to a particular complainant cannot be considered impermissibly vague in all of its applications and thus will necessarily survive a facial vagueness challenge." *Id.*

¶ 45 To establish that a statute is unconstitutionally vague, "a defendant must demonstrate either (1) that the statute[ ] do[es] not provide 'the kind of notice that enables ordinary people to understand what conduct [is prohibited],' or (2) that the statute[ ] 'encourage[s] arbitrary and discriminatory enforcement.'" *Id.* ¶ 13 (third alteration in original) (quoting *State v. Honie,* 2002 UT 4, ¶ 31, 57 P.3d 977, *cert. denied,* 537 U.S. 863, 123 S.Ct. 257, 154 L.Ed.2d 105 (2002)). Defendant fails to establish that subsection (1)(a) of the DUI statute violates either test.

### A. Notice

¶ 46 "Vagueness questions are essentially procedural due process issues, i.e., whether the statute adequately notices the proscribed conduct." *Board of Comm'rs v. Petersen,* 937 P.2d 1263, 1267 (Utah 1997) (citation and internal quotation marks omitted). "If a statute is sufficiently explicit to inform the ordinary reader what conduct is prohibited, it is not unconstitutionally vague." *MacGuire,* 2004 UT 4, ¶ 14, 84 P.3d 1171 (citation and internal quotation marks omitted).

¶ 47 Defendant argues that subsection (1)(a) of the DUI statute does not limit the amount of time that can pass between a

---

9. Indeed, contrary to Defendant's assertion that subsection (1)(a) of the DUI statute creates a conclusive presumption of guilt if a person's BAC is measured at or above the proscribed level during a subsequent chemical test, Defendant remained free to "challenge the accuracy of the test on any *relevant* ground," *State v. Preece,* 971 P.2d 1, 6 (Utah Ct.App.1998) (emphasis added) (citation and internal quotation marks omitted).

defendant's operation or control of a vehicle and the subsequent chemical test. Essentially, Defendant advances the argument that subsection (1)(a) does not specify that the alcohol causing the subsequent .08 or greater BAC test result must be the same alcohol present in the person's system at the time he or she operated a motor vehicle, and thus, a person could be convicted for DUI if they consumed alcohol days, weeks, or even months after driving. After all, the test producing the BAC of .08 would, under these circumstances, be a "subsequent chemical test," Utah Code Ann. § 41–6a–502(1)(a). In effect, Defendant argues that this uncertainty in the statute means that he did not know how to "steer between lawful and unlawful conduct." *MacGuire*, 2004 UT 4, ¶ 14, 84 P.3d 1171 (citation and internal quotation marks omitted). We disagree.

¶ 48 We note at the outset that "[i]t is a basic principle that legislative enactments are endowed with a strong presumption of validity." *State v. Mohi*, 901 P.2d 991, 1009 (Utah 1995). Indeed, we do not strike a statute "unless there is no reasonable basis upon which [it] can be construed as conforming to constitutional requirements." *Id.*

¶ 49 When considering the meaning of a statutory provision, our "analysis begins with the plain language of the provision." *Utah Sch. Bds. Ass'n v. State Bd. of Educ.*, 2001 UT 2, ¶ 13, 17 P.3d 1125. Moreover, "the plain language of a statute is to be read as a whole, and its provisions interpreted in harmony" with other elements of the statutory scheme. *Lyon v. Burton*, 2000 UT 19, ¶ 17, 5 P.3d 616.

■ ¶ 50 We conclude that subsection (1)(a) is sufficiently clear that it informed Defendant of the conduct that it prohibits. The DUI statute identifies conditions under which the Legislature has determined that a person is disqualified from driving either because that person is under the influence of drugs and/or alcohol or has a specified or unsafe blood alcohol concentration. *See* Utah Code Ann. § 41–6a–502(1) (2010) (providing that "a person may not operate or be

in actual physical control of a vehicle" under certain conditions). Subsection (1)(a), in particular, disqualifies a person from operating or controlling a vehicle if that person "has sufficient alcohol in the person's body that a subsequent chemical test shows that the person has a blood or breath alcohol concentration of .08 grams or greater at the time of the test." *See id.*

¶ 51 Disqualification under subsection (1)(a) is premised on several conditions, two of which are most important to our analysis. First, subsection (1)(a) makes disqualification contingent on a person "ha[ving] ... alcohol in the person's body." *Id.* Because disqualification only occurs once the conditions of subsection (1)(a) are met, it is clear that only alcohol that enters a person's body prior to driving is relevant to determining whether a person has violated subsection (1)(a). Second, it is clear that in order for a person to be disqualified under subsection (1)(a), the alcohol present in the person's body prior to driving must be "sufficient" to cause the person's BAC to reach .08 grams or greater as measured by a subsequent chemical test.[10] *See id.* Thus, a person who has not consumed sufficient alcohol to raise his or her BAC to .08 or higher would not be disqualified from driving. Likewise, any alcohol entering into a person's system after he or she ceased driving could raise a reasonable doubt that the person had sufficient alcohol in his or her system prior to driving to cause the person's BAC to reach .08 or higher at the time of a subsequent test. *See id.*

¶ 52 Thus, stated succinctly, the plain language of subsection (1)(a) puts a person who drives on notice that he or she violates subsection (1)(a) if (1) the person had alcohol in his or her system prior to or while driving and (2) the alcohol present in the person's body prior to or while driving causes a blood or breath alcohol concentration of .08 grams or greater as measured in a subsequent chemical test. *See id.*

¶ 53 We acknowledge that under a literal reading of subsection (1)(a) in isolation, an

**10.** This is true regardless of whether the person's BAC had reached .08 at the time of driving. *See*  *supra* Part II.

indeterminate amount of time could pass between the time a person operates or controls a vehicle and the time of a subsequent chemical test. However, because the alcohol present in a person's system at the time the person operated or controlled a vehicle must be the same alcohol that causes the subsequent .08 or greater BAC test result, this period is necessarily limited to the amount of time in which the alcohol in the person's system at the time of driving is capable of causing the person's BAC to be at or greater than .08. Accordingly, there is no danger that a person could operate a vehicle and be convicted under subsection (1)(a) for consuming alcohol days, weeks, or months later, as Defendant contends.

¶ 54 The plain meaning of subsection (1)(a) is even more apparent when read in harmony with other elements of the statutory scheme. *See Lyon*, 2000 UT 19, ¶ 17, 5 P.3d 616. The DUI statute is "part of the Motor Vehicle Code, whose purpose it is to govern the safety of the use and operation of motor vehicles." *Greaves v. State*, 528 P.2d 805, 807 (Utah 1974). Further, the DUI statute is found in Part 5 of the Motor Vehicle Code, which is titled "Driving Under the Influence and Reckless Driving." *See* Utah Code Ann. §§ 41–6a–501 to –530 (2010 & Supp.2011). Likewise, the DUI statute's own title is "Driving under the influence of alcohol, drugs, or a combination of both or with specified or unsafe blood alcohol concentration[.]" *Id.* § 41–6a–502 (2010). Plainly, the focus of the DUI statute, and by extension subsection (1)(a), is on ensuring safe driving.

¶ 55 The only interpretation of subsection (1)(a) that gives effect to the purpose of the DUI statute, i.e., ensuring safe operation or control of motor vehicles, is that the alcohol that causes the .08 or greater BAC test result at the time of a subsequent test must be the same alcohol that was present in the person's body while he or she was driving. The Motor Vehicle Code in general and the DUI statute in particular, with their focus on safe driving, are not concerned with regulating the conduct of an individual after he or she ceases operating or controlling a vehicle. Specifically, alcohol consumed by an individual after he or she has ceased driving does not affect how that person drove prior to consuming alcohol. However, alcohol consumed prior to or while driving could affect a person's ability to later operate or control a vehicle safely. Accordingly, subsection (1)(a), when read in harmony with other elements of the statutory scheme, is clearly aimed at preventing a person from driving after that person has consumed enough alcohol that the person's BAC will eventually reach .08 or greater. Thus, the plain language of subsection (1)(a) is not susceptible to Defendant's interpretation, under which an individual could potentially be convicted under subsection (1)(a) for driving a vehicle on, say, March 7 and then being found on April 12 to have a BAC of .08 or greater, as established by a chemical test performed on that day.

¶ 56 Therefore, we conclude that subsection (1)(a) "provide[s] the kind of notice that enables ordinary people to understand what conduct [is prohibited]." *State v. MacGuire*, 2004 UT 4, ¶ 13, 84 P.3d 1171 (second alteration in original) (internal quotation marks omitted). Specifically, Defendant was on notice that if he consumed alcohol prior to driving his motorcycle and that alcohol was sufficient to cause his BAC to reach .08 as measured at the time of a subsequent chemical test, he could face prosecution under subsection (1)(a). In addition, contrary to Defendant's contention, the amount of time that could have passed between his driving and the subsequent blood test was necessarily limited to the amount of time that the alcohol in his system prior to driving could produce a BAC test result of .08 or greater.[11] Thus, Defendant was on notice as to how to "steer between lawful and unlawful conduct." *Id.*

11. We also note that the time between Defendant's driving and the subsequent blood test was relatively short—two-and-a-half hours, at most. Further, Defendant admitted to consuming alcohol prior to driving and no evidence was admitted at trial establishing that alcohol entered Defendant's system between the accident and the blood test. Accordingly, Defendant cannot claim that he was vulnerable to prosecution days, weeks, or months after the accident for alcohol that entered his body after he ceased driving his motorcycle.

¶ 14 (citation and internal quotation marks omitted).[12]

## B. Arbitrary and Discriminatory Enforcement

¶ 57 Defendant has put forth no argument, either in his brief or at oral argument, that subsection (1)(a) "encourage[s] arbitrary and discriminatory enforcement." *State v. Honie*, 2002 UT 4, ¶ 31, 57 P.3d 977. Accordingly, because Defendant has failed to carry his burden, *see MacGuire*, 2004 UT 4, ¶ 8, 84 P.3d 1171, we decline to address this issue.

¶ 58 Defendant has not met his burden of establishing that subsection (1)(a) of the DUI statute either fails to provide adequate notice of the conduct it proscribes or encourages arbitrary and discriminatory enforcement. We therefore conclude that the trial court did not err in determining that subsection (1)(a) is not unconstitutionally vague.

## CONCLUSION

¶ 59 We conclude that the trial court did not err by denying Defendant's motion to suppress because neither Defendant's rights under the Fourth Amendment nor his rights under the implied consent statute were violated by the pre-arrest PBT administered to him. Likewise, the trial court did not err in excluding Defendant's expert testimony and limiting his cross-examination of the State's expert because such testimony would have been irrelevant to conviction under subsection (1)(a) of the DUI statute. Finally, we conclude that Defendant has not met his burden of establishing that subsection (1)(a) of the DUI statute is unconstitutionally vague.

¶ 60 Affirmed.

¶ 61 WE CONCUR: STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN, Judges.

---

**12.** We acknowledge that subsection (1)(a) of the DUI statute, *see* Utah Code Ann. § 41–6a–502(1)(a) (2010), is not a paradigm of clarity and that it might be advisable for the Legislature to state more explicitly that the alcohol that causes the subsequent BAC test result of .08 or greater must be the same alcohol present in a person's system prior to or while driving. Nevertheless, "[t]he fact that [the Legislature] might, without difficulty, [choose] clearer and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975) (citation and internal quotation marks omitted).